Bassil *v.* Elmore.

No question was made on the trial that the plaintiff was a non-resident.

It might be that the plaintiff could prove himself a resident of the State, had the question been raised.

The judgment must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 3, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]

ALMIRA J. BASSIL *vs.* SELAH P. ELMORE.

In an action for slander in uttering words not actionable *per se*, the plaintiff, in order to recover, must allege and prove special damages, and the special damages must be particularly stated in the complaint.

An allegation, in the complaint, that the false and slanderous statements of the defendant greatly injured the plaintiff, and caused her relations to slight and shun her, does not specify any pecuniary injury for which a recovery can be had.

Where a complaint contains but one valid count, only one slanderous charge can be proved. Evidence to prove another conversation, in which other and different words from those alleged in the complaint were used, is inadmissible.

But when the plaintiff does not go beyond the words laid in the complaint, he may show that those words were spoken on several different occasions, although there may be but one count in the complaint.

It is well settled that other defamatory words, not alleged, cannot be proved; because, if they are slanderous, another action would lie for them, and a plaintiff would recover two compensations for the same injury. And if they are not slanderous, or if they were not followed by special damages, they are wholly immaterial. Such evidence is not competent on the question of malice.

Where a witness testified that the defendant told him that the plaintiff had been having unlawful criminal intercourse with other men about D.; that she was having, and had been having, for two years, criminal intercourse with different young men about D.; that she had had intercourse with so many she did not know who was the father of her child; *held* that this language was, in substance, a charge that the plaintiff was a public prostitute, and was therefore evidence in support of a count alleging the slanderous words to have been that the plaintiff was "a public whore."

Every person who repeats slanderous words is liable to the person injured by

means of such words; unless the circumstances under which they were uttered, or the proofs in the case, show that they were uttered without malice, or, in other words, that they were privileged.

In an action for slanderous words, not actionable *per se*, the plaintiff may not prove that the special damage alleged in the complaint was caused by hearing that the defendant had uttered the words charged against him. In order to admit such evidence, it must be made to appear, 1. That the slander induced the special damage; 2. That the defendant uttered the words either in the hearing of the person, or that the slander was communicated to him by one authorized by the defendant to do so; or that the communication was, as to the person making it, privileged, or otherwise wholly without malice.

Where the special damage alleged was that the plaintiff was, by reason of the slander, turned away from her uncle's house, where she resided; *held* that if this was the natural and immediate consequence of the slander, it was such pecuniary damage as would sustain the action.

*Held, also,* that it was for the jury to say whether the plaintiff was turned away from her uncle's on account of the slander; and that that question having been properly submitted to them, and they having found for the plaintiff, the court could not disturb the verdict.

*Held, further,* that the circumstance that a great length of time had elapsed between the speaking of the words and the dismissal of the plaintiff from her home, was proper for the consideration of the jury, and would have warranted the conclusion that it could not be true that the plaintiff was turned away by reason of the slander.

When a person repeats, again and again, a slander, after being urged not to do so, and follows it up by saying that he can prove it, and expressing a desire to have an opportunity to do so, all ground for pretending that the words were privileged, is taken from the case.

A mistake of the court, in placing the admission of evidence on an untenable ground, is not sufficient reason for reversing the judgment.

THIS action is for damages sustained by the plaintiff by reason of slanderous words spoken by the defendant. There are two counts in the complaint. The first charges that the defendant, on the 1st of July, 1862, and on divers other days during the months of July, August and September, in the same year, uttered and published of and concerning the plaintiff, that she was a public whore, by reason whereof she was turned away from the house of her uncle, with whom she had lived, and by whom she had been brought up and supported.

The second count is for uttering the same words, in

Bassil *v.* Elmore.

August and September, 1862, but does not allege special damage. The language of the count is : " Which false and slanderous statements greatly injured the plaintiff in her good name, and caused her relations to slight and shun her."

On the trial, before Justice Morgan, at the Onondaga circuit, in January, 1865, the plaintiff proved, by the first witness, that the defendant had said of the plaintiff that she was not virtuous ; that she had had a child, of which some one other than his son was the father ; and was proceeding to prove another conversation between the witness and the defendant, in which other defamatory words were used ; to which the defendant's counsel excepted, on the ground that there was but one count in the complaint alleging special damage, and that but one slanderous charge could be proved. The objection was overruled by the court, and the defendant's counsel excepted.

Several conversations with persons other than the plaintiff's uncle, with whom she lived, were proved, for the purpose of proving malice on the part of the defendant. The defendant's counsel objected to the evidence, on the ground that slanderous words not spoken to or in the hearing or presence of the uncle were not competent to prove malice. The objection was overruled, and the defendant's counsel excepted.

The defendant's counsel insisted that there was no sufficient or competent proof of special damages. The court held that there was sufficient proof to carry the case to the jury; and submitted it to them accordingly.

The said counsel also insisted that the words were privileged. This question was also submitted to the jury.

The jury found a verdict for the plaintiff for $1,050 damages ; for which sum and costs judgment was duly entered, and from such judgment the defendant appealed.

*Mr. Andrews*, for the appellant.

*D. Pratt*, for the respondent.

*By the Court*, MULLIN, J.   As many of the questions raised on the trial are not relied on by the defendant's counsel in his points on the argument of the appeal, it will be more intelligible to follow these points, and to examine them in the order they are presented.

The first point is, that the second count in the complaint is defective, as it contained no averment of special damages, and no proof could be given under it.

When this question arose, the plaintiff's counsel had examined the first witness to a conversation with the defendant in the spring of 1862, in which the defendant said that the plaintiff was not virtuous. The counsel then requested the witness to proceed and detail the next conversation.   To this the defendant's counsel objected, on the ground that as there was but one good count in the complaint, but one set of slanderous words could be proved.   The plaintiff's counsel told the court there were two counts in the complaint, and the court thereupon held that the other conversation could be proved. The judge says : "They have two counts, and they have a right to prove two speeches, so to speak ; that is, they shall not be confined to this one occasion.   On this occasion there was nothing charging her with being a public prostitute."

The second count was defective.   The words not being actionable *per se*, the plaintiff, in order to recover, must allege and prove special damages, and the special damages must be particularly stated in the complaint.   (1 *Chitty's Pl.* 386, and *Tobias* v. *Harland*, 4 *Wend.* 537.)

The allegation in the second count, that her relations and friends slighted and shunned her, does not specify

Bassil *v.* Elmore.

any pecuniary injury for which a recovery could be had. (*Beach* v. *Ranney*, 2 *Hill*, 309.)

The complaint then must be considered, for the purposes of this question, as containing but a single count, and having but one count, only one slanderous charge can be proved. (*Root* v. *Lowndes*, 6 *Hill*, 518. (*Keenholts* v. *Becker*, 3 *Denio*, 346.)

If the plaintiff, in calling for another conversation, intended to prove other and different words from those alleged in the first count, and the court is to be deemed to have intended to admit such proof, the ruling is undoubtedly erroneous.

In the first conversation testified to by the witness Elmore, the defendant did not call the plaintiff a public whore. In the second one he did not use these words; so that in none of the conversations sworn to by this witness were the precise words laid in the complaint proved to have been uttered by him.

The words used in both conversations imputed want of chastity. So that the evidence received was not of a conversation in which different slanderous words were used. Although from the offer it might have been inferred that the judge intended to admit a different slanderous charge to be proved, yet the evidence does not prove any such charge, and hence the error, if it was one, has done the defendant no harm. As was said by Bronson, J., in *Root* v. *Lowndes*, (*cited supra :*) "When the plaintiff does not go beyond the words laid in the declaration, I see no reason why he may not show that those words have been spoken on a dozen different occasions, although there may be but one count in the declaration."

The defendant's second point is that the words proved by Madison Elmore were not competent to show malice on the part of the defendant. They were not heard by the plaintiff, and did not contribute to produce the particular damages proved in the action.

As I have already remarked, Elmore did not swear that the defendant charged that the plaintiff was a public whore, in either of the conversations testified to by him.   If we are to consider his evidence as not being given to prove the words laid in the complaint, then Elmore's evidence could operate only upon the question of malice.   And it is well settled that other defamatory words not alleged cannot be proved; as, if they are slanderous, another action would lie for them, and thus a plaintiff would recover two compensations for the same injury.   And if they are not slanderous, or if they were not followed by special damages, they were wholly immaterial.   (*Root* v. *Lowndes, cited supra.   Howard* v. *Sexton*, 4 *Comst.* 157.)

The defendant's counsel did not object to the evidence of the witness Elmore, at the time it was offered, on the grounds now suggested; but in a subsequent stage of the case he moved to strike it out, on the ground that the words proved having been uttered in the absence of the uncle by whom the plaintiff was supported, no special damages could have resulted from it. · The court denied the motion, on the ground that the evidence was competent on the question of malice.

Although the grounds taken by the defendant's counsel for the exclusion of the evidence may have been untenable, yet the court admitted it for the very purpose for which it was incompetent.   He has a right now, I think, to insist on its inadmissibility on the ground taken by the court.   If he had moved to strike out on the ground that it was incompetent to prove malice, it is quite obvious the court would nevertheless have admitted it.   If it could be said that the defamatory words, testified to by Elmore, were, in substance, the same as those alleged in the complaint, they would have been admissible as being a mere repetition of the slander; and the mistake of the court in placing their admission

Bassil *v.* Elmore.

on an untenable ground would not be a sufficient reason for reversing the judgment.

The first conversation sworn to by Elmore does not contain a charge of public prostitution, and I think that charge must be proved. The defendant said she was not virtuous—she was guilty—and that some person other than his son was the father of her child. Had this conversation been specifically objected to, I think it ought to have been rejected. But the motion embraced it, and a second conversation in which a charge that she was a public prostitute was substantially made, and as one was admissible, the motion was properly denied.

In the second conversation, the defendant told the witness that the plaintiff had been having unlawful criminal intercourse with other men about Delphi; that she was having, and had been having, for two years, criminal intercourse with different young men about Delphi. On cross-examination, the witness said that in the second conversation, the defendant told him that she (the plaintiff) had had intercourse with so many she did not know who was the father of her child. This language is in substance a charge that the plaintiff was a public prostitute, and was therefore evidence in support of the first count.

The third point is, that the court erred in allowing the witness, Diana Hill, to testify that she had heared that the defendant had repeated stories about the plaintiff.

The evidence to which this point was intended to apply is stricken from the case, and I have not, therefore, examined it.

In this connection I propose to examine the question suggested under the second point, but which would have been more distinctly presented by the third, to wit, whether evidence of the publication of the slanderous words to persons other than the ones through whom the damages alleged were sustained, was competent.

Every person who repeats slanderous words is liable

to the person injured by means of such words; unless the circumstances under which they were uttered, or the proof in the case, show that they were uttered without malice, or, in other words, that they were privileged. To hold the originator of the slander responsible not only for his own wrong but for the wrongful and illegal acts of others would be giving to the injured party double compensation for the injury done him, and it would involve, in every case, the inquiry whether the defendant was the originator of the slander, and if he was, whether those who repeated it heard him utter it, or received it from others, and how far they themselves were responsible for the slander. In morals, the original wrongdoer is justly held responsible for all the consequences of his wrongful act, and it is neither excuse nor palliation that others, knowingly and willfully, aided in doing the injury. But in law, where the object is to obtain compensation for the wrong, each person engaged in it must be responsible for the natural and immediate consequences of his own actions, and each is held for his own share in the injury, without regard to the influence of his act on the other wrongdoers, except so far as malice may form an element of damages.

If the plaintiff was turned from her uncle's house because of the slander uttered by the defendant in his hearing, he is unquestionably liable. So also if he uttered the slander to another, who communicated it to the uncle under circumstances which rendered the communication privileged, and the uncle, in consequence of it, turned away the plaintiff, the defendant is clearly responsible. But if the slander was uttered in the hearing of persons who repeated it under circumstances rendering them legally liable for the slander, and it was in consequence of such slander that the plaintiff sustained the special damage alleged in the complaint, the defendant is not responsible, but those who uttered it are. Such were the views of Justice Beardsley, in *Keenholts*

v. *Becker*, (*cited supra.*) If this is the correct exposition of the law, it would follow that evidence of slanderous words spoken to persons other than the one through whom special damage was sustained, would not be competent unless the person through whom it is communicated, is himself the mere mouth-piece of the slanderer, or the repetition of the slander is, as to the one repeating it, privileged.

It is possible that under this view of the liability of persons uttering defamatory words, not slanderous *per se*, injustice may be done in many cases to the person injured. We know that slanders are very often set afloat in the community which cannot be traced to the one who first uttered them, and yet no person can be identified by whom they have been repeated and circulated. They seem to float in the air, to be communicated from one person to another without the intervention of language, and the victim may suffer the most serious injury to his or her pecuniary interests, without the means of redress, if it is necessary to fix liability on the originator of the slander, to prove the communication of the slander to the person through whom the injury was sustained was privileged, or that the person repeating the slander was authorized to publish it by the one who first uttered it.

But though injustice may be done in the case supposed, yet it is better to suffer some inconvenience from a rule of law that is practicable, and in the main just, than to introduce one that would be uncertain and not unfrequently mischievous in its operations. A person standing to another in relation of uncle, and practically of a parent, should not forget the claims which the orphan niece, that he took in her infancy and reared to womanhood, has upon him, because there are idle rumors afloat affecting her character. He should require imputations against her character to come to him from some one who is responsible for what he utters, and not

turn her from his house because rumor, with her thousand tongues, has assailed her.

In the case before us, the uncle had the highest evidence of the plaintiff's want of chastity. She was unmarried, and yet the mother of a child, and to believe that idle rumor as to what another uncle had said of her character induced him to drive from the shelter of his roof one whom he had reared as his own daughter, while the living evidence of guilt had failed to induce him to do it, would be simply absurd.

I am persuaded that the rights of parties will be better protected by the rule I have suggested than by introducing a less certain and comprehensive one.

I am of the opinion, therefore, that a plaintiff may not prove, in an action for slanderous words not actionable *per se*, that the special damage alleged in the complaint was caused by hearing that the defendant had uttered the words charged against him. In order to admit such evidence it must be made to appear, 1st. That the slander induced the special damage ; 2d. That the defendant uttered the words, either in the hearing of the person, or that the slander was communicated to him by a person authorized by the defendant to do so ; or that the communication was, as to the person making it, privileged, or otherwise wholly without malice.

While such is my view of the law, I do not perceive that any question was made, on the trial, that any different rule was applied in the case. The evidence of hearsay, as to the speaking of the defamatory words, was, first, that of Mrs. Hill, and her evidence is stricken from the case ; and, second, the evidence of Hill himself ; and to his evidence on that subject no objections are taken, and no rulings were had.

When the question was up whether the plaintiff could prove a repetition of the slander, the court told the defendant's counsel that the defendant was responsible for its utterance from his own lips, and not for its utterance

by others. But the learned judge adds: "They may prove the same slander reported, and prove special damages resulting from it, under one count." I think the word "*reported*" must be inserted by mistake for "*repeated;*" for to hold in one part of the sentence that the defendant was not liable for the words of others, and in another part that he would be liable if the slander is "*reported,*" would be a blunder which I am quite sure Judge Morgan did not commit. Reading the sentence with the words changed as suggested, it is not only sensible but consistent, and is a correct exposition of the law.

I have said thus much on the question of evidence, although it is not necessary to a decision of the case before us, but because it is a question of considerable interest and importance, and should be settled.

The fourth point is that there was no sufficient proof of special damages.

The special damage alleged is that the plaintiff was turned from her uncle's house by reason of the slander. If this was the natural and immediate consequence of the slander, it was such pecuniary damage as would sustain the action. (*Retan* v. *Drew*, 19 *Wend*. 304. *Olmsted* v. *Miller*, 1 *id*. 506.)

It was for the jury to say whether the plaintiff was turned away from her uncle's on account of the slander. That question was properly submitted to them, and they having found for the plaintiff, we cannot disturb it.

The great length of time that elapsed between the speaking of the words and the dismissal from the house was a very proper subject for the consideration of the jury. I may go further, and say that if I had been a juror in the case, I would have held that in view of the lapse of time (about a year and a half) it could not be true that she was turned away by reason of the slander. But I was not on the jury. Those who were, have come,

Bassil *v.* Elmore.

as they had a right to do, to a different conclusion, and we are forbidden to disturb it.

It is also insisted, by the appellant's counsel, that the damages must have resulted from what was said by the defendant to Hill, and not in any degree from what Hill learned as to what the defendant had said. I agree with the counsel; but the difficulty is, that the question was not presented so as to call for a ruling on this point, and hence there is nothing for us to review. It could have been raised by objection to the evidence of Hill as to what he had heard; but no such objection was made. The judge might have been requested to instruct the jury that damages could not be given for what Hill had heard, but no such request was made. I do not see how the defendant is to get relief if he has been injured by this hearsay evidence.

The fifth and last point is that the words were privileged.

If the question could be confined to the first conversation with the first witness, I should agree with the counsel. But when the defendant repeats, again and again, the slander, after being urged not to do so, and follows it up by saying that he could prove it, and expressing a desire to have an opportunity to do so, all ground for pretending that the words were privileged is taken from the case. Again, it was a question for the jury, and their finding is conclusive.

While I think the damages are, under the proof of the plaintiff's character, very large, yet they are not so excessive as to call for a new trial on that ground.

The judgment must be affirmed.

[ONONDAGA GENERAL TERM, January 2, 1866. *Mullin, Morgan* and *Bacon,* Justices.]