TOMPKINS H. WHEELER v. EDWIN W. WALLACE.

*Judicial courtesy—Levy on increase—Damages.*

1. Error will lie on the demeanor of the trial judge if it be such as to prevent a fair trial or prejudice the case upon the facts before the jury.

2. A trial judge ought not to sanction such an abuse of cross-examination

as lies in seeking to entrap witnesses into making inadvertent state ments which the examiners may use unfairly.

3. It is improper for a trial judge to volunteer his notion of the purpose of a question when competent counsel, in asking it, have not seen fit to explain it; it is also improper for him to reflect, before the jury, upon the capacity and memory of counsel to whom clients have entrusted their interests; and it is positive error for him to state as a fact, when there is any question about it, that a witness has sworn to a particular statement.

4. A party on the stand was asked: "Your father didn't get any advantage of you in that sale, did he?" and answered, "No I don't think he wanted to take any advantage of me ;" whereupon the judge rebuked him for doing more than to answer the question and said, "No matter what he wanted to do." *Held* that there was nothing perverse in the answer and the rebuke was unwarranted.

5. A trial judge has no right so to instruct the jury as to their being at liberty to disbelieve witnesses as to manifestly reflect upon a particu- lar witness.

6. Creditors levying on property fraudulently transferred have no right to take from the transferee the increase therefrom if they have allowed it to accumulate for a long time under his management.

7. Plaintiff in an action of trover for property seized and sold under an execution against another person is not responsible for the sale, and it is error to charge that he ought not to be heard to complain that it did not bring as much as it ought, unless he actively interfered to prevent its doing so.

Error to Washtenaw. (Joslyn, J.) April 9.—April 16.

Trover. Plaintiff brings error. Reversed.

*E. D. Kinne* for appellant.

*Sawyer & Knowlton* for appellee.

Cooley, C. J. This action was brought for the conversion of certain live-stock, farming implements, and other farm property which defendant, as sheriff of the county of Wash- tenaw, had taken from the possession of the plaintiff by virtue of writs of execution against Harvey M. Wheeler, the father of the plaintiff, and on a claim that it was the property of said Harvey. It was conceded that the property had mostly belonged to said Harvey, but the plaintiff claimed to have

purchased it from him, and the defendant contested the purchase as fraudulent. The purchase was made in September, 1878, and was accompanied by a lease for two years from said Harvey to the plaintiff of a farm of one hundred and twenty acres of land in the township of Pittsfield, for the rent of which the plaintiff was to board and lodge the family of said Harvey, including his wife and two daughters, and to pay the interest on a mortgage of $3000. He was also to pay all taxes, and to keep the premises in good repair. The executions on which the property was taken were issued more than three years after the plaintiff had made his purchase. Some of the live-stock was the natural increase of that which he had bought, and some of the other property he claimed to have obtained in trades, by way of exchange, while his title was uncontested.

On the trial the defendant had judgment, and the plaintiff brings error. A large number of exceptions are taken, some of which relate to the manner in which the trial was conducted by the circuit judge, and others to his rulings on points of law raised by counsel. It is complained that the course of the circuit judge was such as to render it impossible for the plaintiff to have a fair trial, or the unbiased judgment of the jury upon the facts ; and certain remarks of the judge in the course of the trial, as well as the whole charge, are incorporated in the bill of exceptions, to show that such was the fact.

It is very unusual to have exception taken on writ of error to the manner and deportment of the trial judge in the conduct of the trial, and under ordinary circumstances a court of review would not scrutinize very closely his methods when no error in his rulings was alleged. Still, it is possible for a judge to deprive a party of a fair trial, even without intending to do so, by the manner in which he conducts the case, and by a plain exhibition to the jury of his own opinions in respect to the parties, or to their case ; and when it is apparent that a fair trial has not been had, a court of review should give relief as soon for that cause as for any

other. The fact that the duty to do so is unusual or unpleasant, is no reason for declining it.

In this case we are satisfied the plaintiff has not had a fair trial. In saying this it is not necessary to impute to the judge any purpose to be a partisan in the case, or otherwise unfair. It is not likely he intended to try the case with less than his customary urbanity and courtesy; and when he brings before the jury, as he does in his charge, the familiar figure of the goddess of justice, with her scales nicely weighing and scrutinizing the evidence, it is to be assumed that he meant to be as impartial himself as he directed the jury to be. It is, nevertheless, possible for a judge, however correct his motives, to be unconsciously so disturbed by circumstances that should not affect him, as to do and say, in the excitement of a trial, something, the effect of which he would not at the time realize, and thereby accomplish a mischief which was not designed. Possibly, such circumstances may have existed in this case.

The plaintiff took the stand as his own witness, and gave evidence of the lease and sale, and of what he did in respect to the property afterwards. The evidence is not given in full, and what appears does not fully explain itself. Among the questions asked was: "Did you know anything about the Doran judgment?" *Answer.* "No, sir." *Q.* "You did not know anything about that?" *A.* "No, sir." *Q.* "There was $400 or $500 levied on the property that you never heard of?" *A.* "I never knew anything of it." The counsel for the plaintiff then said: "That is not fair. He said he did not know of it in 1878, but he did in 1880." To this the counsel for the defendant replied: "He has sworn he did not know of it at all." The plaintiff's counsel responded: "You get him to swear that by putting your question in such a way." Here it is seen that the plaintiff's counsel is insisting that the witness understood the question to relate to the time of the purchase, and that it was unfair for defendant's counsel to put questions which the witness would so understand, intending thereby to obtain answers which might be understood to relate to a subsequent time.

Whether this intimation of unfairness was well founded or not we cannot determine by the record; but the judge here remarked: "That is one of the glorious rights of cross-examination, and you cannot interfere with it. That is one of the things you can go to the jury on." *Counsel for the Plaintiff:* "We did not ask anything about that." *The Judge:* "No matter. You say he makes two different statements about this transaction,"—a palpable error on the part of the judge—"and you can follow it up; that is one of the ways of measuring a witness as to how he is testifying, and should not be interfered with so as to show to the witness that he has fallen into a trap set by the other side." To this the response of counsel was very pertinent and very proper: "I did not suppose courts of justice were made to set traps, and I except to the remarks of the court."

While the plaintiff was still upon the stand the defendant offered in evidence three certain chattel mortgages made by Harvey M. Wheeler. Plaintiff's counsel objected to their reception as not proper on cross-examination of the witness, and also because they were immaterial; upon which the judge remarked: "I cannot stop to give reasons. It is plain enough to me that, while they are collateral papers, when it becomes important or necessary in any manner to cross-examine a witness, then the party against whom a witness is called has a right to put in his hands a letter or document, or any thing on which he wishes to cross-examine, so that it shows a general bearing upon his testimony." To this counsel for the plaintiff replied: "The papers which he puts in the hands of the witness are not papers he is a party to at all, and are transactions between third parties." The judge responded: "I see the object and purpose, and might as well disclose it here. They are now seeking to convince the jury that this witness is not fair and honest when he says he did not know anything about his father's debts, and they put this paper in evidence, which shows a certain state of facts on the face of it, and then are going to ask whether he ever knew anything about it. It has nothing to do with the actual transaction between the parties, but only to show

whether the man had the knowledge which he swears he did not have, as a sort of an explanation to this matter. I am in danger of saying what I ought not to in the presence of this jury if I go any further in giving my reasons about this. I got up to the very line once or twice, and do not know but I stepped over it in trying to explain why I make this ruling." We quite agree with the judge that in this matter he was up to the very line of what was proper, and we also think that he had passed it. The defendant's counsel, who was a prominent member of the bar of the State, and quite competent to manage the defendant's interests, had not undertaken to explain the purpose of this evidence, and could scarcely have needed the assistance of the court in doing so. Neither could the judge have known with any certainty what the purpose was, and it is quite possible that in guessing at it, he may have misjudged.

Immediately following this was the following question by defendant's counsel: " At the time you gave your father, or sold your father back, as you call it, a portion of this property mentioned in this bill of sale, for the purpose of enabling him to give a chattel mortgage to Louis Wheeler, how much did you say he allowed you for. that property?" Thereupon Mr. Kinne, as counsel for the plaintiff, said: " Now, your honor, you say you do not wish us to interrupt the cross-examination: is it proper for me—and if it is not I will not do it—to object to a question when it assumes that a witness has made a statement which, according to my recollection, is not true?" To which the court replied: " Why, Mr. Kinne, your memory is good for nothing, or else you are getting insane. Don't you recollect that he has sworn to it?" Mr. Kinne responded: " Yes; but not that he gave it for the purpose of enabling him to give a chattel mortgage to Louis. I object for the reason that it assumes he made it for that purpose, and I say it was for nothing of that kind." *The Court.* " He has either now or on some other occasion sworn to that."

If the only question that could arise upon this colloquy were one of the proper courtesy to be observed between

court and counsel, we should be inclined to leave it to the judge's own sense of propriety, taking it for granted that there must have been in the case some undisclosed circumstance that disturbed the judicial calmness, and caused the utterance of unguarded expressions, for which, as the counsel in the case was a thoroughly reputable gentleman, we may well suppose the judge took early occasion to apologize. But there was something more than a want of courtesy : the judge made a statement of fact regarding the plaintiff which was in the nature of evidence, and was very well calculated to impress the minds of the jury to the plaintiff's prejudice. It does not appear by the record that the plaintiff had given in this case the evidence the judge imputed to him, and if he had given it on any former occasion it was not for the judge to state that fact in the presence of the jury, any more than it was to permit any third person to put in an unsworn statement to that effect.

A little further on the following question was put to the plaintiff : "Your father didn't get any advantage of you in that sale, did he? He did not get it for less than it was worth ?" His answer was : "No ; I don't think he wanted to take any advantage of me." On which the judge said to the witness : "No matter what he wanted to do ; just answer the question whether you think he did or not, and stop there. The question was not as to what he did want, and don't you make your answers any more so." This was a very sharp reprimand to the witness, and there was nothing in what he had said to call for it. He might have restricted his answer to the simple negative, but there was nothing perverse in his adding what he did, and nothing even improper.

Soon after this episode counsel for the plaintiff objected to certain evidence offered for the defense, as being irrelevant, when the judge, in overruling the objection, said that "nobody but the attorneys in the case fail to see what use may be made, and what turn some testimony may take." This was severe upon the attorneys, but the judge should have remembered that even if their deficiencies were as great as his remark supposed, their clients had intrusted to

them the management of the case, and that he himself was in no manner responsible for any want of capacity or comprehension which they might exhibit.

Complaint is made of the judge's charge that it was an argument against the plaintiff, and the complaint is not without justice. Twice in the course of it the judge read to the jury the following passage from an opinion of this Court: "The jury are under no obligation to believe the plaintiff's statement, and unless it convinces their reason, they are entirely at liberty to reject it altogether. They must take the evidence with all the surroundings; and often other things which go to characterize a transaction are more convincing than the evidence of any single witness, especially if an interested witness." It was quite proper to read this, or to give the substance of it in his instructions, but the repetition seems well calculated to impress upon the minds of the jury a caution to be observed, not as to the testimony of the witnesses in general, but only as to the testimony of this plaintiff, and to indicate an opinion on the part of the judge that the plaintiff's evidence was particularly suspicious. An anecdote of the judge's early life was given to illustrate how a witness may, by an inadvertent word, demonstrate his own falsehood; and after what had taken place between the judge and the plaintiff on the stand, it would not be an unnatural inference on the part of the jury that the anecdote was intended to intimate to them that in this case the plaintiff had in like manner disclosed his want of truth.

These things make it necessary that the case should go back for a new trial. A few other things may be mentioned. The judge spoke of the lease as reserving a support to the plaintiff's father; and this was commented upon as a badge of fraud. But there was no such reservation. The lease provided for the board and lodging of the father and his family as rent; and there was nothing apparently fraudulent or suspicious in this. The judge instructed the jury that, if the transaction between the plaintiff and his father was fraudulent, the officer had a right to take not only the property transferred to the plaintiff, but all the increase. The

increase, it is to be understood, had been accumulating for more than three years; it might have been for twenty; and the increase was brought about by the labor and at the expense of the plaintiff; and if the creditors have the right which the judge conceded to them here, they might have waited until in danger of being cut off by the statute of limitations, and taken advantage of the labor and skill bestowed by the plaintiff upon the property to deprive him of whatever he might have made by means of it in the meantime. We do not think they have any such right. If the sale had been attacked speedily, any natural increase which had taken place might have been claimed; but the time which had elapsed in this case was altogether too long for such a privilege to continue.

Before the trial of the case the officer had sold the property at public auction. On the question of damages the defendant proved this sale to limit the plaintiff's recovery in case he succeeded, and the plaintiff gave evidence tending to show that the property did not bring its full value. Upon this the judge charged that, if the jury should find that through the plaintiff's fault the property did not bring its full value, he ought not to come now and complain that the property did not bring as much as it might—as much as it was actually worth at the time of the sale. This was error. The plaintiff was in no manner responsible for the sale, and unless he actively interfered to prevent the property bringing a fair value, he was chargeable with no fault in respect to it.

The judgment must be reversed with costs, and a new trial ordered.

The other Justices concurred.