# OCTOBER TERM, 1890.[*]

GILBERT G. MCDUFF V. THE DETROIT EVENING JOURNAL
COMPANY.

*Libel and slander—Pleading—Damages—Evidence—Practice in circuit courts—Conduct of counsel and court.*[1]

1. The fact that an article is libelous *per se* does not render evidence of special damages, or of specific acts of others towards the plaintiff in consequence of its publication, admissible, unless alleged in the declaration.

2. Under an allegation of general damages in a libel suit, the issue is, what damages has the plaintiff sustained *generally* in the community where he is known, by the publication of the libelous article? and not what he has suffered in individual instances where those who have known him have treated him differently from what they did before. In the latter case, if he wishes to recover damages, he must allege them.

3. A son was made trustee of his father's estate, and changed his residence to accept the trust. He brought a libel suit for an alleged false publication charging him with having "got away with the property," and with leaving his parents in a starving condition, and on the trial one of his witnesses was asked if he did not send for plaintiff to come and take charge of the estate, and answered, under objection, that he did, the communication being made by letter; which testimony is held irrelevant, it being of no consequence *how* he came to take charge of the estate, but, if material, the letter was the only competent evidence of the fact.

4. An editorial in a newspaper published in another state, referring to the subject-matter of an article for the publication of

* Continued from Vol. 83.
[1] For full digest of points decided, see *Table of Cases Reported.*

which a libel suit is brought, but which is not shown to have been based upon such publication, is inadmissible as evidence in said suit, and if admitted the error is not cured by striking it out of the case.

5. Appellate courts must presume that one occupying so important a position as that of circuit judge can influence a jury; and whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of the other, or uses language which tends to bring an attorney into contempt before the jury, or uses any language which tends to prejudice them, he commits an error of law for which the verdict and judgment must be promptly set aside.

6. It is never proper practice, when an objection to a question has been sustained, for counsel to state in the presence of the jury what he can or proposes to prove if allowed to do so.

So *held*, where a witness was asked on cross-examination if he had not taken a lewd woman into his house, and the answer was excluded, whereupon the counsel asking the question stated that if the objection was withdrawn he could prove the fact by the sister of the witness, and the court refused to instruct the jury that the remarks were improper, and that they should pay no attention to them, which statement and refusal are held to be reversible error.

Error to Wayne. (Brevoort, J.) Argued October 10, 1890. Decided December 24, 1890.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Wilkinson & Post (Levi T. Griffin, of counsel), for appellant.

*James H. Pound,* for plaintiff.

GRANT, J. This is an action of libel, in which the plaintiff recovered verdict and judgment, and defendant appeals.

The libelous article is as follows:

"Humane Agent Vhay is investigating the case of Andrew McDuff [meaning the plaintiff], 73 Beech street, who

is charged with having got away with the property of his father and mother, who are now said to be starving in a Jones-street attic."

Other publications. subsequent to this upon the same subject were introduced by plaintiff under objection, and he then introduced evidence tending to show the falsity of the libelous article. Testimony was introduced on the part of the defendant tending to prove the truth of the charge, and good faith in its publication. The issue in the case was as clear and simple as can well be imagined. If the charge was not true, then the article was libelous. The questions to be submitted to the jury were:

1. The truth of the libelous article.

2. If not true, the amount of damages suffered.

3. The good faith of the defendant in mitigation of damages.

1. The first point raised in defendant's brief is that the cause should not have been submitted to the jury at all. This point was not raised in the court below, and is not assigned as error, and therefore cannot be considered here.

2. The following questions were asked the plaintiff, and answered under objection:

"Q Has there been any difference whatever in the treatment since the publication of these articles by any of your acquaintances from what there was before?"

"Q. Will you tell us in what the difference consisted?"

This testimony was objected to for two reasons:

1. Because it involved special damages not alleged in this declaration.

2. The questions were not confined to the libelous publication declared on, but involved damages resulting from other publications.

Both objections were well taken. The allegation of damages in the declaration is as follows:

"He, the said plaintiff, has been and is greatly injured

in his good name, fame, credit, and reputation, both as an individual and as such trustee, and brought into public scandal and disgrace, is suspected to have been guilty of the misconduct charged upon and imputed to him as aforesaid, and has been greatly vexed, harassed, oppressed, and impoverished, and hath been and is otherwise much injured."

No special damages are alleged; only general damages, in the general and usual language of declarations in libel cases.

The article is libelous *per se* but that of itself does not render evidence of special damages, or of specific acts of others towards plaintiff in consequence of the publication, admissible, unless alleged in the declaration. Whenever a plaintiff alleges no special damages, he is presumed to rest content with those damages which are the natural result of the libelous publication upon his character and reputation and feelings, without proof of specific facts. He is presumed to have a good reputation and character. The damages he is entitled to recover are the result of the natural injury to these and to his feelings, coupled with the malice, or want of malice, with which the article was published. These the defendant is prepared to meet. He cannot be prepared to meet special instances of slight, avoidance, loss of hospitality on the part of friends and acquaintances, from whatever part of the world the plaintiff may choose to bring witnesses or to testify himself. If plaintiff desires to recover for damages for such special injuries, he must allege them. *Bassil v. Elmore,* 65 Barb. 627; *Terwilliger v. Wands,* 17 N. Y. 57; *Dicken v. Shepherd,* 22 Md. 399; Folk. Starkie, Sland. & L. § 378, and cases there cited.

The rules of pleading are founded upon reason and fairness. The issue in ordinary lawsuits is limited. The parties are more or less familiar with the transactions involved, and the defendant may fairly be presumed to

have some knowledge of the testimony against him, and what witnesses he can produce to meet it. In a libel suit, under an allegation of general damages only, the issue is, what damages has the plaintiff suffered generally in the community where he is known, by the publication of the libelous article? and not what he has suffered in individual instances where those who have known him have treated him differently from what they did before. In the latter case, if he wishes to recover damages, he must allege them. No other rule would be fair and reasonable. *Davies v. Solomon,* 41 Law J. Q. B. 10. In that case the allegation was that the plaintiff had ceased to receive the hospitality of divers friends, naming them. It is laid down in Folkard's Starkie, Sland. & L. § 634, that—

"A plaintiff, under an allegation of general injury, may show a general diminution of business; but, if he seeks specific damages, he must give specific evidence."

An examination of some of the records in libel suits heretofore decided by this Court has convinced me that this has been understood by the profession to be the rule. In *Weiss v. Whittemore,* 28 Mich. 374, it was decided that, under the allegation of a general loss of trade, the names of the customers driven away or lost need not be mentioned. But the Court held:

"The general allegation of the loss of trade is sufficient, and the declaration may be supported by evidence of such general loss."

It was held in *Bourreseau v. Journal Co.,* 63 Mich. 437, that it was not competent for the defendant to prove distinct facts that had not been made part of the issue as framed, and that no one could be prepared in advance to anticipate every fact, true or false, which might be offered in evidence, and of which plaintiff had no notice. The evidence on the part of the plaintiff must be governed by the same rule as on the part of the defendant; and,

if the defendant cannot introduce specific facts without pleading them in justification, for the same reason the. plaintiff should not be permitted to prove them. Otherwise, there would be one rule of evidence for the plaintiff, and another for the defendant. Briefly stated, the rule is that the allegation of general damages will admit only general proof.

3. Plaintiff was one of the trustees of the estate of Andrew McDuff. He was not living in Detroit at the time he was made trustee. One McFedries, a son-in-law of Andrew McDuff, was asked the following question:

"You did send for Gilbert McDuff to come here and take charge of this estate?"

This was objected to as irrelevant and incompetent; the request, if any, having been made by letter. Plaintiff's counsel then offered some letters written by the witness. to plaintiff, which the counsel himself said he did not think were admissible. After considerable discussion by counsel, the court asked the witness the following questions:

"*Q.* You did send for Gilbert McDuff to come here and take charge of this estate?
"*A.* I did, most emphatically.
"*Q.* Did you consult with his father and mother before you sent for him?
"*A.* Yes, sir.
"*Q.* How did you communicate with him?
"*A.* In writing the letter."

Thereupon counsel for defendant moved to strike out the answers and questions, to which motion the court. replied: .

"I am going to let them stand, if they are the only answers in the case."

The testimony was both irrelevant and incompetent. So far as the management of the estate by plaintiff was concerned, it was of no consequence how he came to

take charge of the estate; but, if material, the letters were the only competent evidence of the fact.

4. Another witness for plaintiff was asked the following question:

"That part of the article published in the Detroit Evening Journal of February 1, 1888, stating 'who are said to be starving in a Jones-street attic,' referring to the mother and father of the plaintiff, is it true or untrue?"

This question was for the determination of the jury from the facts placed by the evidence before them. It called for the opinion of the witness from the facts within her knowledge. These facts it was competent to testify to. The conclusion was for the jury, and not for her. The answer called for her opinion, which was clearly improper.

5. A copy of the Omaha Herald was introduced, containing the following:

"Andrew McDuff, of Detroit, who had amassed a fortune, had not been seen for about ten years, till recently found by an agent of the Humane Society. He was confined in a cold and filthy room, without food or sufficient covering. Probably, the relatives who have been living off Mr. McDuff's money during these ten years thought that such treatment would kill the old man. Now that the unfortunate has been rescued, there only remains the pleasant duty of sending his unnatural son to the penitentiary, which fairly yearns to receive him."

This was objected to, and was finally stricken out by the court. In this connection a letter from one P. McDuff, a brother of the plaintiff, was introduced, under objection, which contained the following:

"Some person unknown to me sent me Omaha Herald for February 4, with a piece on the fourth page marked, which if you think proper to look it up, you will probably excuse my course."

Plaintiff showed no connection between the publication

in the Journal and the article in the Omaha Herald, which appeared under the editorial column of that paper, and not as a piece of news obtained from another publication. That article and the letter were clearly inadmissible. The jury very likely presumed that the article in the Omaha Herald was based upon the article in the Journal, but there was no evidence of the fact. Error in admitting such testimony is not cured by striking it out. There may be cases where courts may well say that the jury could not be prejudiced by the admission of incompetent testimony when it is stricken out. In such case it would be error without prejudice, and judgment would not be reversed for that reason. But we cannot apply such ruling to the present case, where the inevitable result of the evidence would be so injurious to defendant.

6. A witness on behalf of the plaintiff was asked:

"Now, I would like to know whether any of your customers that you remember stated anything with reference to their being moved to tears by this article.

"A. A lady came into the store, and said that her mother read it, and shed tears over it, and felt badly about it, and gave as a reason that she had been a schoolmate of his."

This testimony was clearly too incompetent, on the ground of hearsay, to merit discussion.

7. The next assignment of error relates to the conduct of the circuit judge upon the trial. To an objection to the admission of testimony made by defendant's counsel, the court said:

"I do not want to compliment Mr. Pound, but I am well aware of the fact that Mr. Pound knows how to try a lawsuit."

Mr. Brearley, the manager of the defendant, at the close of his cross-examination was dismissed by plaintiff's counsel with the remark:

"I think that is all, Mr. Brearley; you can go on and state that I have not cut my eye-teeth again, if you wish."

Defendant's counsel excepted to this remark, to which the court said:

"I do not think the papers make fair remarks. I noticed the paper called Mr. Pound 'General.'"

Plaintiff's mother, who was 75 years old, was asked if plaintiff had said anthing to her about her moving out of the house, and answered:

"I understood that he wanted me to go to the Old Ladies' Home.
" *The Court.* Answer the question.
" *Witness.* I am trying to.
" *Court.* You are not. I do not hesitate to say it to you, madam."

A colored man by the name of Johnson was a witness for the defendant. He had made a statement which was in direct conflict with the testimony on the part of plaintiff. . Plaintiff's counsel thereupon asked the court to commit the witness for perjury, and stated to the court, in the presence of the jury:

"The witness deliberately lied when he said Gilbert McDuff locked his father up in that house."

Defendant's counsel excepted to this language, and the court thereupon said:

"I tell you, I have a decided opinion of this man's testimony, and I intend in my charge to the jury to call their attention to his testimony. The manner in which this man swore yesterday is something I shall never live long enough to forget. And put this in the record, if it ever gets out of the court-room, and keep it there: A man who will do as he did, and point out a man under the solemnity of oath, and swear that a certain man paid $1.10, I say, sir, I have my opinion about it, and a decided opinion of it."

Defendant's counsel objected to this statement, and

stated that the court had no business to make such a remark from the bench; to which the court replied:

"I have. Take your exception. I have,' and I will say more if you want it."

And in charging the jury the judge said of this witness:

"I think it my duty to charge you that in regard to his evidence I have a decided opinion."

With the propriety of such conduct and language we have nothing to do. Our only province is to determine whether they amount to a legal error; and however unpleasant the duty may be, in such cases, we must not shrink from performing it. Whatever language may be used by counsel in the heat of trial, it is the legal duty of the judge to preside and decide with impartiality, and to keep counsel within proper bounds. Appellate courts must presume that one occupying so important a position as that of circuit judge can influence a jury. It is their duty to follow his instructions as to the law. Whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of the other, or uses language which tends to bring an attorney into contempt before the jury, or uses any language which tends to prejudice them, he commits an error of law for which the verdict and judgment must be promptly set aside. Appellate courts cannot correct mistakes of fact. Trial courts, therefore, cannot be too circumspect and careful to see that questions of fact are submitted to the unbiased judgment of the jury, which, under our jurisprudence, are for their sole determination. To sanction such conduct and language as the above by the circuit judge would tend to render trials a farce, and result in a denial of justice. Language less open to criticism has been held error by this Court. *Wheeler v. Wallace*, 53 Mich. 355; *Cronkhite v. Dickerson*, 51 Id. 177; *People v. Hare*, 57 Id. 505.

8. The witness Peter McDuff was asked by plaintiff's counsel, on cross-examination, if he had not taken a lewd woman into his house. This, upon objection, was excluded, whereupon plaintiff's counsel stated that, if counsel for defendant would withdraw his objection, he could prove it by this man's sister. The court refused to instruct the jury that the remarks were improper, and that they should pay no attention to them. It was error on the part of counsel to make the remarks. No verdict should be allowed to stand in the face of such statement to prejudice the jury, and to get the full effect of excluded evidence before them. It is never proper practice, when an objection to a question has been sustained, for counsel to state in the presence of the jury what he can or proposes to prove if allowed to do so. After it was made, the court could not well have done less than to instruct the jury to disregard it.

It is alleged that errors were committed in instructing the jury upon the measure of damages. What we have already said upon the question of special damages renders any discussion of these instructions unnecessary. Under the repeated decisions of this Court upon this subject, no difficulty can exist in properly instructing a jury. The rules governing this case are laid down with clearness and precision in *Scripps v. Reilly*, 38 Mich. 10.

Judgment must be reversed, with costs of both courts, and a new trial ordered.

CAHILL and LONG, JJ., concurred with GRANT, J.

CHAMPLIN, C. J., and MORSE, J., concurred in the result.