## REDMOND v. SHEER.

1. APPEAL AND ERROR—QUESTIONING OF WITNESSES BY TRIAL COURT
   —RECORD.

   The Supreme Court declines to hold that a trial court had in-
   dulged motions, gestures, facial expressions, or other actions
   designed to or which did influence the jury unfavorably against
   plaintiff's case upon record showing remonstrance in the judge's
   chambers to such type of conduct and denial by the court of
   intentional prejudicial conduct accompanied by statement
   that in view of contradictory methods of treatment of plaintiff's
   injuries by his medical and chiropractor witnesses the court
   saw fit to ask more than in the usual case of the doctor what
   he thought of the treatments given by the chiropractor in order
   to bring out the facts.

2. TRIAL—QUESTIONING OF WITNESSES BY TRIAL COURT.

   Jury's verdict for defendant in action arising out of automobile
   collision *held*, not to have resulted from unfair questioning of
   witnesses by the judge, under record showing questions directed
   toward (1) plaintiff's knowledge of the difference between
   medical doctors and chiropractors, by both of whom he had
   been treated, (2) elucidation of the fact that the medics had
   recommended immobilization of plaintiff's back and the chiro-
   practor had advised to the contrary and manipulated it instead,
   (3) interpretation by the medics of X-ray pictures of plaintiff's
   back taken by the chiropractor, and (4) whether, if plaintiff's
   back had pained him for about 10 days after the accident, then
   stopped hurting, but pain resumed some months later when
   he started to do heavier work, the later pain could be the
   result of injuries received in the accident, which questions were
   not phrased in a manner slanted in 1 direction or indicating
   the judge's opinion as to what the answer should be.

BLACK, KAVANAGH, and SOURIS, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial § 75.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 2, 1963. (Calendar No. 3, Docket No. 49,848.) Decided July 17, 1963.

Case by Carlton Redmond against Frank Sheer for personal injuries sustained in automobile collision. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Adams & Wade (William E. Wade,* of counsel), for plaintiff.

*Erickson, Dyll, Marentay & Slocum,* for defendant.

DETHMERS, J. This is a suit for damages for injuries sustained in an automobile accident. From jury verdict and judgment for defendant the plaintiff appeals.

Plaintiff makes no claim of error in the court's rulings on admissibility of evidence or jury instructions. The only question he raises on appeal is as follows:

"Did the trial judge in his questioning of the parties and the witnesses usurp the duties of counsel, unfairly communicate to the jury his opinion on the weight and credibility of testimony, unduly stress the merits of medicine v. chiropractry, and by his demeanor and interference in the conduct of the trial, so prejudice the plaintiffs' case that a new trial should have been granted?"

Plaintiff says in his brief:

"As everyone knows, a written record is not capable of demonstrating tone of voice or physical gestures. There is no way plaintiff and appellant can show to this Court that the trial judge did indulge excessively in the use of the shrug, the expression of disbelief in raising the eyebrows, the stare of

doubt and the question accompanied by the vocal tone of incredulity, other than to simply state that he did. This we do."

After the trial had been in progress for a time, counsel for plaintiff, in chambers, stated to the judge the substance of the language just above quoted from his brief and, further, that the court had been questioning the witnesses excessively and in a manner calculated to influence the jury against plaintiff's case. He then said:

"I ask the court at this time to refrain from getting into the case to the degree of taking over the duties of counsel."

To this the court responded:

"Let the record show that the court did not knowingly make any gestures, smile or move his hands so as to show that the court was in any way prejudiced against the plaintiffs' lawyer or his client. In view of the fact that the plaintiffs' own medical experts advocated completely contradictory methods of treatment, as testified to by the plaintiff, the court did ask and did inquire more than in the usual case of the doctor as to what he thought of the treatments that were given by the chiropractor, and I think that was perfectly proper. It is up to the jury to decide when they hear the chiropractor who they will believe. I am bringing out the facts, that is all. The court will not refrain from asking any questions that it feels will help the jury to arrive at the truth."

This presents a record, then, of statements by plaintiff's counsel, made in chambers, that the judge had "with telegraphed motions and gestures to the jury, in the presence of the jury" given the jury an opinion as to what the judge thought of plaintiff's proofs and case and, in response, the judge's denial. We cannot, on the basis of nothing further than that in the record, and the bald assertion thereof by plain-

tiff's counsel in the brief, hold that the trial court indulged motions, gestures, facial expressions, or other actions designed to or which did influence the jury unfavorably against plaintiff's case.

There remains the matter of the court's questioning of witnesses. The questions to which plaintiff objects were directed toward (1) plaintiff's knowledge of the difference between medical doctors and chiropractors, by both of whom he had been treated in this case, (2) elucidation of the fact, already brought out in the testimony, that the medics had recommended immobilization of plaintiff's back and the chiropractor had advised to the contrary and manipulated it instead, (3) the interpretation by the medics of X-ray pictures of plaintiff's back taken by the chiropractor, and, finally, (4) whether, if his back had pained him for about 10 days after the accident, then stopped hurting, but the pain resumed some months later when he started to do heavier work, as plaintiff had testified, the later pain could be the result of injuries received at the time of and in the accident. The questions were not phrased in a manner slanted in 1 direction or indicating the judge's opinion as to what the answer should be. They were directed to plaintiff, an educated man, and to the doctors and chiropractor in the case, who appeared well able to take care of themselves as witnesses. Examination of the record does not impel us to the belief that the jury's verdict for defendant resulted from unfair questioning of witnesses by the judge.

Affirmed. Costs to defendant.

CARR, C. J., and KELLY, SMITH, and O'HARA, JJ., concurred with DETHMERS, J.

BLACK, J. (*for reversal*). What was said, in the early and regularly cited case of *Wheeler* v. *Wallace,*

53 Mich 355, 357, 358,[1] ushers appropriately the ensuing opinion for reversal. After having observed that reviewed exceptions "to the manner and deportment of the trial judge" are exceedingly "unusual," the Court (per Cooley, C. J.) opened discussion of the presented exception this way:

"Still, it is possible for a judge to deprive a party of a fair trial, even without intending to do so, by the manner in which he conducts the case, and by a plain exhibition to the jury of his own opinions in respect to the parties, or to their case; and when it is apparent that a fair trial has not been had, a court of review should give relief as soon for that cause as for any other. The fact that the duty to do so is unusual or unpleasant, is no reason for declining it.

"In this case we are satisfied the plaintiff has not had a fair trial. In saying this it is not necessary to impute to the judge any purpose to be a partisan in the case, or otherwise unfair. It is not likely he intended to try the case with less than his customary urbanity and courtesy; and when he brings before the jury, as he does in his charge, the familiar figure of the goddess of justice, with her scales nicely weighing and scrutinizing the evidence, it is to be assumed that he meant to be as impartial himself as he directed the jury to be. It is, nevertheless, possible for a judge, however correct his motives, to be unconsciously so disturbed by circumstances that should not affect him, as to do and say, in the excitement of a trial, something, the effect of which he would not at the time realize, and thereby accomplish a mischief which was not designed."

---

[1] "This Court has not hesitated to reverse for new trial when the trial judge's questions or comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict. *Wheeler* v. *Wallace,* 53 Mich 355; *McDuff* v. *Detroit Evening Journal Company,* 84 Mich 1 (22 Am St Rep 673); *People* v. *Bigge,* 297 Mich 58; *People* v. *Cole,* 349 Mich 175." *People* v. *Young,* 364 Mich 554, 558, 559.

Methinks the trial judge has protested his innocence too little, and not enough. Appellant's grave challenge (see the appendix at end of this opinion) having been made on the record at chambers, and the resultant issue having been duly saved and presented for review, this Court should be assured explicitly that the trial judge did not as charged, by "gestures and smiles and throwing up of hands,'" wittingly or unwittingly indicate to the jury his own opinion of appellant's case and testimony. Instead (see the appendix again) we find the trial judge declaring only that he did not "knowingly" make any gestures or other prejudicial indications as complained. And this is not all. Upon denial of appellant's motion for new trial, the judge modified the more his contradiction of such charged prejudicial conduct. He said:

"As to the court using facial grimaces or motions, the court denies that any such thing happened as far as the court was conscious about. If the testimony was such as to cause the court to unconsciously make facial grimaces, the court, of course, would not be aware of it, but over the years the court has heard much startling testimony and has become generally immune to it, so that I do not think the court was guilty of making unconscious gestures. Counsel naturally being an advocate is not an impartial judge of this matter.

"The jury decided the case on the question of liability and never got to the question of medical knowledge and reliability. If it were to be conceded that the court was guilty of the acts claimed by counsel, and unduly questioned his medical witnesses I do not see how that would have affected the question of liability."

One need but add that, whether any such judicial hint to the jury is made consciously or unconsciously,

the aggrieved party is and will be[2] at the absolute
mercy of the trial judge; hence the strict rule of
judicial deportment the law applies when the issue
at hand is tried to a jury. True, the reviewing court
takes the word of the trial judge when on rare occa-
sion disputes such as this arise. Nevertheless, ac-
cepting that word, the court demands that it be both
categorical and precise on penalty of reversal for
retrial.

Reading now what was charged against the judge
and what was equivocally denied by him, we are
obliged to find that prejudice to appellant's case may
have resulted from that which, as in *Wheeler* above,
probably came about as a result of the judge being
"unconsciously so disturbed by circumstances" as
to produce some at least of the unrecorded facial and
physical actions of which complaint was made. And
we are impressed in such context by the apparently
desperate action of counsel, when he decided to chal-
lenge the judge at chambers. It requires a fair share
of audacious viscera to proceed thus, and the very
fact of counsel's action called for something more, in
the way of unqualified refutation by the trial judge,
than the foregoing quotations disclose.

The second point made by appellant is governed
by *In re Stockdale's Estate,* 157 Mich 593, 606 (fol-
lowed in *Toms* v. *Vreeland,* 167 Mich 341, 344, and
*Simpson* v. *Burton,* 328 Mich 557, 563, 564):

"We do not question the right or the duty of the
circuit judge to question witnesses, and to see that
the facts are properly brought before the jury, but
in so doing it is his duty to so frame his questions
as not to indicate his own opinion, and not to lay
undue stress upon particular features of a witness'
testimony tending to impeach him. We think that
the course pursued by the trial judge in this instance

---

[2] At least until courtroom photography is permitted.

constituted reversible error. (Citing a number of Michigan cases including *Wheeler* v. *Wallace, supra.*)"

The trial judge, in the course of copious questioning of the professional witnesses appellant called to the stand, seems to have gone out of his way to discredit the chiropractic treatment a Dr. O'Dell had given appellant. Witness Ramsey, a doctor of medicine sworn for plaintiff, was interrogated by the judge:

"*The Court:* You gave him a belt to wear?

"*A.* Yes, sir.

"*The Court:* How long?

"*A.* For how long a period of time?

"*The Court:* Yes.

"*A.* Well, I saw him last on September 21, 1959. I prescribed the belt in July, 1959, so he had worn it during this period and when I last saw him I advised him to continue.

"*The Court:* What was the purpose?

"*A.* The purpose of the belt is basically to restrict motion, which tends to take some of the stress off the discs.

"*The Court:* Would chiropractic treatments help it?

"*A.* I have no knowledge of such.

"*The Court:* You gave him a belt to hold it rigid?

"*A.* Yes.

"*The Court:* Now, chiropractic treatment is the opposite, they manipulate?

"*A.* I must beg ignorance of all knowledge of chiropractic treatment.

"*The Court:* If they do manipulate you is that good for disc injuries?

"*A.* In my opinion it might be dangerous.

"*The Court:* Dangerous if there is a disc injury?

"*A.* Yes.

"*Q.* As I recall, you and Dr. McDonald consulted regarding the case, did you not?

"*A.* Yes.

"*The Court:* If the chiropractic treatments helped him what would be your conclusion then?

"*A.* Well, I would say this about it. Most of the things that happen to the human being, fortunately, tend to get well. Most people who have something wrong with them are trying to do something about it, and whatever they are doing about it when they get better they usually give credit to that.

"*The Court:* It might get better without it?

"*A.* Many times without any attention at all, because the human body has this marvelous capacity to get well. * * *

"*The Court:* The fact his back was manipulated by a chiropractor and he got better, would that mean anything to you as to what was wrong in the first place?

"*A.* No, sir.

"*The Court:* Would it rule out a ruptured disc?

"*A.* No, I don't believe it would.

"*The Court:* Your treatment of a ruptured disc is to bind them up and hold it firmly?

"*A.* Basically it is rest.

"*The Court:* And not to move it?

"*A.* Yes.

"*The Court:* So moving it would make it worse?

"*A.* It can make it worse.

"*The Court:* That would be what you would expect, wouldn't it?"

It will be noted that the judge forced Dr. Ramsey, much against the latter's desire, to criticize chiropractic manipulation. This was highly improper and, if admissible at all, should have been left to the interrogation of counsel. Other like questioning tends to support counsel's charge (refer again to the appendix) that the judge during the trial was not concealing too well from the jury his own adverse opinion of chiropractic treatment.

No judicial brief for either side of this wearisome public issue need be made or held. Subject only to the strictly circumscribed right of instructional comment provided by former Court Rule No 37, § 9 (1945) and present GCR 1963, 516.1, the opinions of trial judges upon such matters should be withheld from the jury. One occupying so important a position as circuit judge can influence jurors, and should —during the trial and prior to instruction at very least—keep to himself all opinions or hints of opinions upon disputed facts or issues he must commit to them. *McDuff* v. *Detroit Evening Journal Company,* 84 Mich 1, 10 (22 Am St Rep 673). "We have frequently called attention to the necessity of great care on the part of trial judges to avoid impressing upon the jury the judge's view of the testimony." *Walts* v. *Walts,* 127 Mich 607, 612. This is still the law, notwithstanding the cited court rules. As quoted and adopted from the pen of Judge Learned Hand (*People* v. *Cole,* 349 Mich 175, 200):

" 'Justice does not depend upon legal dialectics so much as upon the atmosphere of the courtroom, and that in the end depends primarily upon the judge.' *Brown* v. *Walter* (CCA 2), 62 F2d 798, 800."

The case in foregoing respects corresponds with simultaneously considered *Dietz* v. *Fifty Plus Five Corporation,* 371 Mich 28, in which like action of the trial judge has come to this court for review. Views recorded there call for similar action here.

In all fairness this opinion should not conclude without recognition anew of a known fact;[3] that judges are men and men are different, and that men of high rectitude do find it difficult on occasion to suppress unconscious indications of their feelings and convictions; whereas others do not. The wit-

---

[3] 3 Cooley on Torts (4th ed), § 481, p 389.

ting, the unwitting, the conscious, the subconscious and the coconscious, are never far apart in the course of human conduct. Even so, when it appears that a trial judge—conceding he did not realize his action —has probably made some grimace or gesture suggestive of judicial scorn or derision respecting the testimony of a witness or the cause of a party, the effect is nothing less than partial usurpation of the jury's function. Consequently, if it requires extraordinary self-control on the part of the judge "to hold the balance nice, clear and true"[4] as between the litigatory contenders, then he must drill himself accordingly. There is no other way to guard the most cherished of all constitutional rights.

For the errors indicated I would reverse and remand for new trial, with costs to appellant.

KAVANAGH and SOURIS, JJ., concurred with BLACK, J.

## APPENDIX

### (Record made at chambers, during the trial, March 14, 1962)

"*Mr. Wade:* If the court please, I was going to make this motion before trial this morning, but I decided I wouldn't, but I feel after this morning I have to put it on the record to protect myself.

"No. 1, yesterday in chambers the court conceived the notion about the relationship between the treatment by a chiropractor and a doctor, which was expressed to me in chambers, and the court has with telegraphed motion and gestures to the jury, in the presence of the jury, in the questioning of each and every witness that took the stand, as to the relative value of chiropractic treatments versus medical

---

[4] The quotation appears in *In re Murchison*, 349 US 133, 136 (75 S Ct 623, 99 L ed 942). It was taken from *Tumey* v. *Ohio*, 273 US 510, 532 (47 S Ct 437, 71 L ed 749, 50 ALR 1243).

treatments, plainly and unabashedly gave the jury, in my opinion, and everybody in the court I talked to afterwards, the opinion the court thought little of chiropractor's treatment, and this was a lawsuit conceived in fraud and founded in it and a big hokus pokus. We have been waiting 2 years to come to trial, and I think the court by its gestures and smiles and throwing up of hands is indicating prejudicially to my client the court's opinion, and the facts are for the jury, without interference by the court.

"Secondly, the entire testimony this morning, in my opinion, consisted of the court interfering in the examination and cross-examination of the medical witness, Dr. Ramsey, and again it was the business of bringing up a chiropractor's treatment. That is not the issue at all. We are not trying out anything as to the relative merits of one practice or treatment against another. It is unfair and likely to disturb the result in this case and I ask the court at this time to refrain from getting into the case to the degree of taking over the duties of counsel.

*"Mr. Pike:* I think this motion is extreme to an almost unheard of degree. I do not agree with counsel's remarks in any respect whatever. As a matter of fact, the purpose of a trial is to get into the facts. The witness produced by the plaintiff, namely, Dr. Ramsey, is an orthopedic specialist, and I believe that he testified based upon the facts and questions asked by counsel. It is known by virtue of the pretrial statement that a chiropractor had seen this man numerous times, and for that reason I felt compelled to inquire of the plaintiff's position as to the efficacy of treatment by a chiropractor.

*"Mr. Wade:* I am not complaining about any inquiry you make. Let that be understood. I am complaining about the court's interference.

*"Mr. Pike:* I take issue with counsel's remark about the court's interference. That is a conclusion. Any court has a right to make certain inquiries in order to bring out the facts so the jury will understand the issues they are called upon to decide.

"*The Court:* Let the record show that the court did not knowingly make any gestures, smile or move his hands so as to show that the court was in any way prejudiced against the plaintiffs' lawyer or his client. In view of the fact that the plaintiffs' own medical experts advocated completely contradictory methods of treatment, as testified to by the plaintiff, the court did ask and did inquire more than in the usual case of the doctor as to what he thought of the treatments that were given by the chiropractor, and I think that was perfectly proper. It is up to the jury to decide when they hear the chiropractor who they will believe. I am bringing out the facts, that is all. The court will not refrain from asking any questions that it feels will help the jury to arrive at the truth."