**FOX v. GULF, C. & S. F. RY. CO.**

No. 10050.

Court of Civil Appeals of Texas. Galveston.

Jan. 24, 1935.

Rehearing Denied March 7, 1935.

Chester H. Johnson, of Houston, for plaintiff in error.

Terry, Cavin & Mills and Rupert R. Harkrider, all of Galveston, for defendant in error.

GRAVES, Justice.

This brief but correct general statement is taken from the defendant in error's brief:

"Suit was. instituted by plaintiff in error, individually, and as administratrix of the Estate of James H. Fox, deceased, against defendant in error for damages in the 10th Judicial District Court of Galveston County. For convenience, the parties will hereinafter sometimes be referred to as in the trial court.

"James H. Fox was the son of plaintiff, and at the time of his death on September 29, 1931, near Bay City, Texas, was a brakeman employed by defendant. Various grounds of negligence on the part of the defendant were alleged, and the statement of facts is exceedingly lengthy, consisting of over 300 pages, contained in two volumes. The case was submitted to the jury, and in response to special issues, the jury found in substance that the engineer operating the train upon which the deceased, Fox, was riding shortly prior to his death, did not cause the train to make an unusual and unnecessary jerk without warning; that defendant used ordinary care to keep its track between the rails and the intersection of the Missouri Pacific track, where deceased met his untimely and unfortunate death, in a reasonably safe condition; that the death of the deceased was the result of an ordinary risk of service, defined as one normally and ordinarily incident to the character of the work being performed; that the death of the deceased resulted from a risk which he assumed as a result of his employment, defined as one ordinarily incident to the service which an employee engages to perform, and such others as are open and obvious to him, or which he must necessarily have known in the ordinary discharge of the duties of service; and that the deceased's death was a result of, and due to, an unavoidable accident.

"Upon this verdict, judgment was rendered that the plaintiff take nothing by reason of her suit against defendant; the cause is properly before this court upon petition for writ of error."

In this court, through her first three propositions, the plaintiff in error assigns as prejudicial error the trial court's action as reflected from this bill of exceptions as qualified in the concluding paragraph:

"While A. G. Fish, a witness for defendant railway company, was testifying on cross-examination, and after he had testified as follows:

"'Q. You know your General Attorney, Mr. Wigley, mighty well? A. Yes.

"'Q. You are still employed by the Santa Fe? A. Yes.'

he was asked this question by Mr. Scruggs, attorney for plaintiff:

"'Q. You want Mr. Wigley to win this case, don't you?' to which defendant's counsel, Mr. Wigley, objected, stating: 'That is highly improper.'

"Whereupon the court stated: 'I don't want a remark like that in the court room.

You are going too far. The jury will not consider that statement.'

"Whereupon Mr. Scruggs stated: 'I withdraw the question, and in addition to that, if I said anything improper I want to apologize.'

"Thereupon the court stated: 'I don't want apologies, and let the repetition out. If you try that again I will handle you. The court is going to be obeyed. I don't care whose side it is. When I make a ruling, the ruling is final, and I don't want the question repeated like you did.' * * * "

Qualification: "The statement of facts can not show the demeanor of Mr. Scruggs in the court room. I do not mean that he purposely carried on the way he did, but I do say it called forth the remarks to which he now takes a bill of exception. I have never worried about apologies from a lawyer who has to be rebuked by the trial Judge for conduct which the Judge considers unfair or not ethical. The attorneys of the Galveston Bar know that when they do these things, they are fined, and the fine is never remitted. Had Mr. Scruggs been an attorney of the Galveston Bar, instead of from Houston, I would have fined him several times during the trial of this case."

As thus qualified, it is not thought this bill reflects any reversible error; in the first place, it seems plain that the trial court's remarks contained no intimation in favor of or against the credibility of the witness, nor any comment upon the weight of any evidence, but only a rebuke of a clearly unjustified insinuation by such counsel against the witness' credibility and integrity as a fair and truthful one—that is, the plain imputation in this concluding question, following the abrupt reference to his being employed at that time by the appellee railway company and knowing its general attorney, Mr. Wigley, mighty well, that he wanted Mr. Wigley to win this case in any event—whether or not the facts justified it; an examination of the long detailed testimony the witness had just been giving fails to disclose any justification for such an insinuation or imputation, his testimony as a witness for the appellee apparently reflecting no other than a purpose to state the facts as he knew them; not only so, but that examination further discloses at least some justification for the trial court's apparent impatience over the matter, such for instance as the same counsel's prolonged and repeated interrogation of this witness as to whether or not he had considered Jas. H. Fox a competent brakeman—during which he had asked him flatly whether he wanted to minimize Mr. Fox—whereupon the court stopped the pillorying on the ground that he had already asked the same thing two or three times; furthermore, the court then proceeded to properly charge the jury that they were the exclusive judges of the facts proved, the credibility of the witnesses, the weight to be given the testimony, but must get the law of the case from the court, and, further, this: "If any juror or jurors shall have any knowledge of any fact * * * or of any witness, outside of that gained by the testimony from the witness-stand, he will not communicate said knowledge to his fellow-jurors, nor take the same into consideration. * * * "

■■ In the situation thus presented, not only was the control of the extent to which the cross-examination of this witness might properly go a matter largely within the discretion of the trial court (Horton v. Ry. Co., 46 Tex. Civ. App. 639, 103 S. W. 467), but the following declaration of our Supreme Court in Sabine & E. T. Railway Co. v. Brousard, 75 Tex. 597, 12 S. W. 1126, is thought to be applicable: "When the remarks are considered in connection with the evidence of the witness, and the subsequent charge of the court, by which the jury were told that they were the judges of the weight to be attached to the testimony, and that it was not the province of the court to pass on that question, or to express an opinion as to the value of the testimony admitted, but they were to be controlled by their own views, we do not think the jury could have been improperly influenced by the remarks."

Next is presented assignment No. II, the material part of which is this: "The court erred in commenting to the jury and in making the statement in the presence of the jury, while the plaintiff, Mrs. Fox, was on the witness stand as a witness, substantially to the effect that the witness ought to be able to specify some month and some occasion just what amount deceased gave her, the said plaintiff, which comment was upon the weight to be given to plaintiff's evidence and calculated to lead the jury to believe that the court doubted the credibility of said witness."

The comment thus specified was this: "If she knows what he contributed, but if she does not, I can't. She ought to know how much she received in the last few months of his life."

The only exception taken to this statement of the court was that it went to the weight of the evidence; it was made while Mrs. Fox

was testifying in her own behalf in response to questions of her counsel seeking to establish the measure of the damages she sustained from her son's death by showing what he might reasonably have been expected to contribute to her, had he lived; in answering such inquiries, she had testified that she could neither tell exactly how much her son had made, nor what specific amount he had contributed to her during the last year of his life; whereupon, her counsel then inquired whether or not he had been considerate of her, to which she replied: "We were just the best of pals. I loved him better than anything on earth and he loved me."

On objection, the court instructed the jury not to consider that question or answer, and, in connection therewith, made this statement: "I am trying to let the testimony in showing the element of damage. You can bring all the testimony you want on that."

Then followed the first above-quoted remark that is made the basis of this assignment.

█Properly construed and considered in connection with the court's appropriate and proper instructions touching the credibility of the witnesses and the weight to be given their testimony, which has been quoted, supra, this court is of opinion that the remarks here criticized as being a comment by the court on the weight of the evidence cannot be reasonably held to have any such harmful effect; rather it would seem to have been a legitimate effort to hold the examination down to proper rules looking toward establishment in fact of what the mother's monetary damage had been by the loss of her son, rather than to permit her to speculate in such vague and indefinite answers upon that inquiry as she gave in testifying to the affection existing between them; in other words, it was not improper for the court to reasonably restrict the testimony to such definite contributions, if any, as he made to her in money or other material benefits rather than to bring out the mutual love and affection they enjoyed.

The charge of the court to the effect that the burden of proof of establishing, by a preponderance of the evidence, the affirmative of her specially-requested issues Nos. 1 to 12, inclusive, rested upon the plaintiff, while that of so establishing the affirmative of its specially-requested issues 1 to 6 rested upon the defendant, and that the burden of likewise establishing the negative of the defendant's special issue No. 4 rested upon the plaintiff is presented as reversible error, because

it amounts to a general charge and informs the jury how to answer the inquiries submitted.

█ As this court reads it, the record fails to disclose that any objection or exception to this charge was made in the trial court; it would seem therefore that the point was waived, R. S. art. 2185; 3 Texas Jurisprudence, p. 202; Fort Worth & D. C. Railway Co. v. Kirby (Tex. Civ. App.) 5 S.W.(2d) 578.

█ In any event, however, since the charge is specifically so framed as to each group of the special issues as to require a finding from a preponderance of the evidence, it is here held not to have been reversible error; in Speer's Special Issues, § 136, page 185, it is said:

"Where the framing of the special issue interrogatories is such as to require a finding from a preponderance of the evidence, it does follow, as we have already seen, that special instruction as to the burden of proof, with respect to that issue, is inapplicable or at least not needed.

"The expressions in some of the opinions to the general effect that instructions with respect to the burden of proof are inapplicable to special issue trials, are fugitive expressions and are not to be taken at their full face value."

See, also, St. Louis, B. & M. Railway Co. v. Heard (Tex. Civ. App.) 66 S.W.(2d) 1092; Psimenos v. Huntley (Tex. Civ. App.) 47 S.W.(2d) 622; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210, at page 214.

Further assignments are in substance to the effect that the court erred: (1) In charging them concerning and submitting special issues to the jury upon whether or not Jas. H. Fox's death was the result of an unavoidable accident, or ordinary risk of the service, or a risk he had assumed upon entering and remaining in the service, or a failure on his part to use ordinary care; (2) in sustaining special exceptions (some thirty in number of them) to the petition of the plaintiff below, in so far as it alleged:

(1) That Jas. H. Fox's death having been brought about instantaneously by the wrongful act of the railway company, it gave the plaintiff, in consequence, a surviving cause of action for the total destruction of her son's earning capacity, under R. S. articles 4675 and 5525, as amended by Acts 1927, c. 239, §§ 1, 2 (Vernon's Ann. Civ. St. arts. 4675, 5525).

(2) That the death of her son had been brought about by the carelessness, reckless-

ness, neglect, and negligence of the railway company and its servants—in a multiplicity of heterogeneous details elaborated to great length—the most material of which, however, is perhaps epitomized as follows: "The engineer suddenly, unexpectedly, and unnecessarily opened up the steam without warning, thus causing the train to make a sudden and unexpected lurch and jerk, and thereafter both the fireman and the engineer thenceforth looked ahead and negligently thereafter failed to look back. That at and about the time the said Fox climbed upon said train and shortly after he had climbed upon said train he was thrown therefrom, his head cut off, his body mangled, and his death instantly caused."

None of these presentments, in the circumstances, involve reversible error; as concerns those thus grouped under (1), it is thought the pleadings and evidence made issues of fact out of—and that the court's instructions were proper concerning—each and all of them; under its general denial of any of the negligence alleged against it, it was permissible for the railway company to show, if it could, that the death of the young man had been the result of an unavoidable accident, and the proof in that behalf on its part showing that its roadbed was in good condition, that the train was being operated at the time of the happening in a careful and cautious manner, and that it was only travelling from about five to eight miles per hour, with all operative conditions functioning in proper manner, the question of whether the accident was so brought about was one for the jury, and its finding thereon—being returned upon sufficient supporting evidence—should not be set aside.

The finding thus made, that the death had been the result of an unavoidable accident, would seem to have rendered harmless the alleged errors, if any, on the court's part in further charging upon the questions of assumed risk and failure upon the deceased's part to use ordinary care for his own safety, but whether or not that is true, the railway company, after first generally denying all the charges of negligence against it, specially set up not only that the death of the deceased had been the result of an ordinary risk of the service in which he was engaged at the time, and such a risk as he had assumed on entering the employment of the company, but further that any action to recover damages for his death was not only controlled by the Federal Employers' Liability Act, 45 USCA §§ 51–59, but also that such death had been proximately caused by his own negligence and contributory negligence; the evidence in support of these special defenses conclusively shows that the train on which the deceased was working at the time of his death was engaged in interstate commerce. Wherefore, such defenses being available under the Federal Employers' Liability Act (39 Corpus Juris, p. 265, par. 385; 35 U. S. St. at Large, c. 149, p. 65), and the railway company having conclusively shown that the casualty occurred while the train was engaged in interstate commerce, the giving of the issues and the instructions on assumed risk were not improper (39 C. J., pp. 689, 690, pars. 892, 893, and cited cases; Osborne v. Gray, 241 U. S. 16, 36 S. Ct. 486, 60 L. Ed. 865).

Furthermore, the jury on sufficient support in the evidence made in epitome these findings: That the engineer did not cause the train to make an unusual jerk at the time involved without warning; that the company did not fail to use ordinary care to keep its track between the rail and intersection in a reasonably safe condition; that the failure of the conductor and brakeman to be on the train at about the time of the casualty was not a proximate cause of the young man's death; that the failure of the enginemen to look back after the deceased had fixed the derail was not a proximate cause of the accident, nor was a combination of such alleged acts of negligence such a proximate cause, but that his death was the result of an ordinary risk of the service and of his employment which he had assumed, and was furthermore caused by an unavoidable accident; this comprehensive verdict in favor of the railway company amounting in sum to a finding either that it was not negligent upon any of the issues submitted, or, if negligent upon any one of them, such was not a proximate cause of the deceased's death, it would seem that, irrespective of the application of the Federal Employers' Liability Act cited, supra, the issues and instructions given on assumed risk were proper under this provision of our state statute, R. S. art. 6437, to wit: "It being contemplated that while the employee does assume the ordinary risk incident to his employment he does not assume the risk resulting from any negligence on the part of his employer, though known to him."

As concerns the averment of the mother of a right of action in her for the total, instantaneous destruction of her son's earning capacity under R. S. arts. 4675 and 5525, as amended (Vernon's Ann. Civ. St. arts.

4675, 5525) it is our conclusion that no such right exists; by our authorities it seems to have been established that the cause of action given to beneficiaries of deceased persons by R. S. art. 4671 is for the pecuniary loss sustained by them and defined to be that sum of money which, if paid now, would reasonably and fairly compensate them for what they might reasonably have expected as contribution from the deceased had he continued to live, and nothing further; Vernon's Annotated Texas Civil Statutes, vol. 14, art. 4671, and footnote cited authorities, especially footnotes 32 to 35, inclusive, together with cited cases.

Recurring, in conclusion, to the plaintiff in error's propositions 11 to 13, inclusive, because of the abstractness thereof, this court is unable to determine just what specific averments are complained of as having been eliminated by the trial court in sustaining some thirty special exceptions to different parts of her pleading, such propositions being in our opinion multifarious, duplicitous, and indefinite to the extent that they are not properly conformable to the court's rules; when the whole record is looked to, however, it seems clear that she was both allowed to plead and offer testimony to prove every theory of negligence advanced by her as having brought about the accident that produced her son's death; in other words, she has not pointed out any specific and material charge of any such negligence carrying supporting proof that was not submitted to and passed upon by the jury; indeed, the verdict of the jury, as appears from the summary of it supra, seems to have comprehended every material issue raised by the pleadings or proof of either party, and the whole of it being in the opinion of this court sufficiently supported, the controversy properly ended with its return.

Further discussion is deemed unnecessary since these conclusions determine the merits of the appeal; the judgment has been accordingly affirmed.

Affirmed, with Justice LANE dissenting.

LANE, Justice.

I respectfully dissent from the action of the majority of this court in affirming the judgment of the trial court.

The suit, as shown, was one brought by the mother for the death of her son, which she alleged was occasioned by reason of several alleged acts of negligence on the part of the defendant railway company. There was evidence raising the issue of negligence as alleged offered by the plaintiff. To rebut this evidence, defendant placed upon the stand as a witness in its behalf one A. G. Fish. On direct examination said witness testified that he had been in the employ of the defendant company for twenty years; that he was so employed at the time of the trial of this case as train master. His testimony relative to the acts of negligence charged by plaintiff was in every respect strongly favorable to the defendant and adversely so to the plaintiff. The evidence on such issue which was submitted to the jury was sharply drawn.

After said witness had, on direct examination, been questioned at great length and had answered such questions in every instance favorably to defendant, counsel for Mrs. Fox, for the purpose of ascertaining the probable bias the witness had in favor of defendant, the railway company, by reason of his long and present employment, asked the witness on cross-examination the following question: "Q. You want Mr. Wigley (counsel for the Railway Company) to win this case, don't you?"

The court in the presence of the jury reprimanded counsel who asked such question as follows: "I don't want a remark like that in the court room. You are going too far. The jury will not consider that statement."

Mr. Scruggs, the counsel, addressing the court, then said: "I withdraw the question, and in addition to that, if I said anything improper I want to apologize."

Whereupon, in the presence and hearing of the jury, the court in reply to the proffered apology said: "I don't want apologies, and let repetition out. If you try that again I will handle you. The court is going to be obeyed. I don't care whose side it is. When I make a ruling the ruling is final, and I don't want the question repeated like you did."

Counsel for the plaintiff duly reserved his exception to the remarks.

I have examined both the record and the statement of facts and I have been unable to discover where the reprimanded counsel or his associate had in any instance disobeyed or attempted to disobey any ruling of the trial court.

I think the question propounded to the witness, who had been shown to have an interest in the success of the defendant as one of its trusted employees for twenty years, was proper, and that the court erred in the harsh manner and words of his ruling and reprimand, to the injury of the plaintiff.

In 38 Cyc., page 1322, it is said: "An attorney at law, as an officer of the court, is entitled to such treatment from the trial court that the interest of his client will not be prejudiced."

Again in same volume, page 1316, it is said: "During the trial the judge should refrain from making any unnecessary comments which might tend to a result prejudicial to a litigant, and when calculated to influence the minds of the jury, such remarks constitute ground for reversal."

Again in same volume, page 1321, it is said: "Remarks of the trial judge showing bias in favor of one of the parties constitutes prejudicial error. So it is ordinarily held to be reversible error for him to make remarks which will tend to excite prejudice or hostility in the minds of the jury toward one of the parties and sympathy for the other, and it has been held in a number of cases that the error is not cured by directing the jury to disregard the remarks," citing many authorities.

Since great deference and respect is shown to the judge, the reprimand given by the judge in the present case would no doubt impress the jury more than would improper argument of an attorney.

In Porter v. Ry. Co., 119 Misc. 704, 197 N. Y. S. 262, 263, in speaking of improper remarks of the trial judge, the court said: "It surely was calculated to impress the jury with the unfavorable view of the court of counsel's general conduct and standing—a view which may fairly be regarded as tending to influence the jury's attitude toward the counsel's client."

In Christman v. Ry. Co., 210 App. Div. 104, 205 N. Y. S. 594, at page 597, it is said: "We think the court should not have criticized the attorney, especially in view of the fact that the attorney is without opportunity to resent such criticism without risk to himself and injury to his client's cause with the jury."

In Kribs v. Jefferson City Light, Heat & Power Co. (Mo. App.) 215 S. W. 762, 763, it is said: "It is sufficient for us to say that great deference and respect is paid by the jury to the trial judge, and he should maintain at all times an impartial attitude, not only in his rulings, but in his demeanor."

In Floyd v. Fidelity Union Casualty Co., 39 S.W.(2d) 1091, 1092, opinion of our Commission of Appeals, it is said: "As pointed out by Chief Justice Pannill in Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, the propositions above cited and the rule announced in those cases have been modified by the decisions in Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765, Wichita Valley Ry. Co. v. Williams, 116 Tex. 253, 288 S. W. 425, and Bain Peanut Co. v. Pinson (Tex. Com. App.) 294 S. W. 536, and the burden is no longer on an appellant to show that an error calculated to prejudice his rights did in fact have that effect, but that when such error is shown, either in an instruction to the jury, the admission of testimony, or in argument, a reversal will follow, if there is any reasonable doubt of its harmful effect, and whether there is such a reasonable doubt, is a question of law and not one of fact."

That the remarks of the trial judge complained of constitute reversible error under the rule announced by the higher courts, I have no doubt.

For the reasons above expressed, I think the judgment should be reversed and the cause remanded.