**McGUIRE et al. v. ROEMER et al.**
**No. 11367.**

Court of Civil Appeals of Texas. Galveston.
May 21, 1942.

Rehearing Denied June 11, 1942.

Russel A. Bonham, Mary Nan Bonham, and W. M. Latham, all of Houston, for appellants.

Bryan, Suhr, Bering & Bell, Chas. W. Bell, Russell Scott, Simmons & Smyth, and Frank Webb, all of Houston, for appellees.

GRAVES, Justice.

This suit was filed September 20, 1940, by appellants, W. C. McGuire and wife,

Verdie Lee McGuire—appellants Russel A. Bonham and W. M. Latham, having joined therein as plaintiffs under a power of attorney, coupled with a ⅓ interest in the property involved, from the McGuires, also dated September 20, 1940—in trespass to try title and for damages to 31/32 of the mineral-rights in 20 acres of land near Houston in Harris County, against appellees, Paul C. Roemer and C. F. Modglin, and the other appellees (who were claimants under those two of mineral-interests in such land); the remaining 1/32 mineral-interest in the tract being admittedly outstanding in appellee, Carl R. Haas.

By the recitations in instruments purportedly having theretofore passed between appellees, Roemer and Modglin, on the one side, and appellants McGuire and wife upon the other, the 31/32 of mineral-rights in the 20 acres so sued for had been reserved to themselves by Roemer and Modglin in a written contract of sale of the 20 acres of land from them to appellant W. C. McGuire, dated November 25 of 1938, which had been followed by a deed thereto from Roemer and Modglin to both the McGuires of date December 1 of 1938, which deed had, in turn, been followed by a deed of trust of even date therewith from the two McGuires, as husband and wife, to Byron G. McCullough, as trustee for Carl Schulz, to secure the payment of the McGuires' $790 note to the latter.

In addition to their trespass to try title action for the stated 31/32 mineral-interests in the 20 acres, appellants, as against the main defendants below—appellees Paul C. Roemer and C. F. Modglin here—sought reformation of such deed of December 1, 1938, under numerous counts, in which they charged against those two appellees misrepresentation, fraud, alteration of instruments, forgery, unilateral mistake, derogation of homestead-rights, usury, failure of consideration, and want of meeting of the minds of the parties to the instruments referred to. In answering the suit, the appellees filed disclaimers to any interest in the 20 acres and any mineral-rights therein, except as to minerals reserved by themselves in the described deed of December 1, 1938, as to which minerals as therein so recited to have been reserved, they answered not guilty, as well as by general denial of all appellants' allegations; they further cross-acted in trespass to try title as affected such mineral-interests so claimed

by them to have been reserved in the deed to the 20 acres of date December 1, 1938.

The trial court overruled appellees' motions for an instructed verdict at the close of appellants' testimony, as well as after all the evidence was in, and submitted what it deemed to be the material questions of fact raised in seven inquiries to the jury.

In answering the special issues so submitted, the jury in material substance found against the appellants on the questions of forgery, material alteration of any of the instruments involved, and on that of the negligence alleged by the appellees against the appellant McGuire, in not having read the deed and the deed of trust, above referred to, at the time they were executed and delivered between the parties thereto.

Thereupon, the court rendered judgment on this verdict to the effect that appellants take nothing, for a recovery by the appellees of the mineral-interests so involved, and for $10,000 in money then held by W. J. Ward, Jr., an ad interim receiver the court had appointed, which represented bonus-money, which the receiver had obtained from the Crown Central Petroleum Company by a lease of the 20 acres to it that had been entered into during the pendency of the suit and prior to its trial on the merits.

The appellants, wthout challenge in that respect from the appellees, thus in their brief make plain the injection of the stated receivership into the cause: "During the pendency of suit, a receivership proceeding was instituted by Roemer and Modglin, joining as cross-defendants Bonham and Latham, who hold a power of attorney coupled with an interest; thereafter the receiver, joined by all parties (with the stipulation that it should not affect the matters at issue nor the rights of any parties), leased the property for oil and gas for $10,-000.00 in cash, (which is now in escrow with the District Clerk to await the final determination of this cause). The lease also provides one-fourth royalty instead of the usual one-eighth. No issue is raised on this appeal concerning the inception of the receivership, or leasing procedure."

So that, by the concessions of both sides on this appeal, while this litigation began below as such a one for the 31/32 mineral-interests in the 20 acres of land in place, it so ended with its subject matter wholly reduced to a contest over which side owned

the $10,000.00 fund so obtained and held in court by the receiver.

On appeal from the judgment so rendered, as this court sees it, that controversy is, in turn, determined by the proper construction of the contracts and deeds which so passed between the parties, under the accompanying facts as found by court and jury in the verdict and judgment as returned.

Preliminarily, it may also be recited that the McGuires began living upon the 20 acres at that time under the deed of December 1, 1938; that they had so continuously lived upon and claimed the same as their home up until the date of this trial below; but that the bulk of the deed of trust debt it so secured to Schulz thereon—as to which the parties stipulated below that Schulz had a superior vendor's and deed of trust lien as against all interests, legal or equitable, of appellants in the land —had not at the date of this judgment been paid; however, the appellants have, in this connection, concluded the general statement in their brief of the nature and result of the suit, with this: "The oil, gas, mineral, and leasing privileges to the land (twenty acres) are the only part in controversy, all defendants having disclaimed as to any surface rights."

The special issues submitted, together with the jury's answers, were these:

"No. 1. Do you find from a preponderance of the evidence that at the time W. C. McGuire signed the second page of the instrument dated November 25, 1938, there was, at such time, a different first page, than as now attached thereto?

"Answer: 'There was not a different first page.' "

"No. 3. Do you find from a preponderance of the evidence that W. C. McGuire did not sign the memorandum in writing in the lower left hand corner of the contract of date August 13, 1938, between Paul C. Roemer and C. F. Modglin and W. C. McGuire, said memorandum reading substantially as follows: '11-25-38. This contract cancelled by mutual consent'?

"Answer: 'He did sign the memorandum'.

"No. 4. Do you find from a preponderance of the evidence that at or before the time he signed the deed of trust dated December 1, 1938, the said W. C. McGuire did not read the deed dated December 1, 1938, signed by Paul C. Roemer and C. F. Modglin, conveying the property involved herein to W. C. McGuire and wife, Verdie Lee McGuire?

"Answer: 'He did not read such deed'.

"No. 5. If you have answered the next preceding Special Issue 'He did not read such deed', and only in that event, then answer:

"Do you find from a preponderance of the evidence that in failing to read such deed (if you have found that he did not read such deed), W. C. McGuire failed to use such care as a person of ordinary prudence would have used under the same or similar circumstances?

"Answer: 'He failed to use ordinary care'.

"No. 6. Do you find from a preponderance of the evidence that at or before the time he signed the deed of trust dated December 1, 1938, W. C. McGuire did not read the following provision of such deed of trust, and on the second page thereof, to-wit: 'Said property above described having been conveyed to the makers hereof subject to certain restrictions set forth in the deed hereinabove referred to and with the express reservation of all oil, gas, sulphur and other minerals in and under and that may be produced from said land and premises, except that the grantees shall receive 1/32 part of the said minerals as a royalty interest only; but grantees having no right to participate in any bonus, rental, or leasing-privileges?'

"Answer: 'He did not read such provision'.

"No. 7. If you have answered the next preceding issue 'He did not read such provision', and only in that event, then answer:

"Do you find from a preponderance of the evidence that in failing to read such provision in said deed of trust (if you have found he did not read such provision), W. C. McGuire failed to use such care as a person of ordinary prudence would have used under the same or similar circumstances?

"Answer: 'He failed to use ordinary care'."

The quoted findings of the jury upon such issues, together with the stated and implied findings of the court itself, in this court's opinion, settled this controversy adversely to the claims of appellants. Those findings and holdings, upon what is deemed sufficient evidence, established against ap-

pellants' controlling facts, which are thus well summarized in the appellees' brief, to-wit:

"(a) That the first contract of sale, dated September 8, 1937, was rescinded by mutual agreement of the parties, novated, and superseded, at a time when the McGuires were in default in payment of the purchase money therein provided for;

"(b) That the property with increased mineral reservations was resold to the McGuires under the contract of August 13, 1938, which was also rescinded by mutual agreement, at a time when the McGuires were not only in default in payment of the purchase money therein provided for, but none of the purchase money therein provided for had been paid by the McGuires; and

"(c) The ultimate contract of sale, dated November 25, 1938, was entered into and consummated by the deed to the McGuires of December 1, 1938, and the deed of trust from the McGuires to McCullough, Trustee, dated December 1, 1938; the first contract dated September 8, 1937, was a rescinded, cancelled, and novated instrument, superseded by the later contracts, deed and deed of trust, and the Court properly excluded it from the evidence upon defendants' timely objection."

■ These combined findings of court and jury not only disposed of all appellants' attempts to reform any of the instruments involved, bindingly upon this court against them, but they further left as the established and controlling facts here these things:

"There was an effective termination of the first contract, based upon valid considerations, by the acts of the parties in agreeing and treating it as rescinded, the novation, and substitution therefor of the second contract, which in turn was cancelled by written agreement and superseded by the third contract.

"At the time of the termination of the first and second contracts, the minerals under this land were of nominal value. It is undisputed that an effort was made by Roemer and Modglin to lease the land for $15.00 an acre, which was unsuccessful. The land was not in any sense 'proven' for oil or gas at those times. It was not until 1940, shortly prior to the filing of this suit, that oil was actually discovered in the vicinity.

"It is undisputed in the record that Roemer and Modglin endeavored day after day, week after week, and month after month, to get McGuire to pay the monthly payments of purchase price provided for in the first and second contracts. They did this by letters, and they did it by going out in the country, and over Harris County trying to find him, and trying to get him to keep his payments current. They wrote him advising him and cautioning that he might endanger or lose mineral rights under the land, unless he kept his monthly payments current. When McGuire failed to make them, they let him keep uninterrupted possession, and sold the place back to him, retaining 1/16 royalty, tried by letter and personal contact to persuade him to make his payments under the second contract, warning him that if he didn't he might lose mineral rights, and upon his failure to make any payments under the second contract, they gave him full credit in the third contract, for all that he ever had paid, allowed him to remain in uninterrupted possession of the land, and did not require him to pay the three months' interest earned under the second contract, provided for by its terms.

"Upon termination of the first contract, there was a resale to McGuire by the second contract, and upon its rescission and cancellation, a resale under the third contract, both the second and the third contracts being amply supported by consideration."

■ The third contract, that is, the one of November 25, 1938, together with the deed and deed of trust pursuant thereto, both of December 1, 1938, being evidentiary of the final agreement between the parties, it follows, almost as the night the day, that appellants had left inuring to them no interest in the minerals sued for; they further established no undue burden upon their homestead-rights in the surface of the land, but were awarded all they so agreed they should have, since the husband alone, without the joinder of the wife, had the right to so protect their homestead—as he was shown to have done —in the circumstances then existing. White v. Shepperd, 16 Tex. 163; Dyess v. Hansen, Tex.Civ.App., 151 S.W.2d 904, writ of error dismissed, judgment correct; Miller v. Deahl, Tex.Civ.App., 239 S.W. 679; Cuthbertson v. E. B. Hayes Machinery Co., Tex.Civ.App., 226 S.W. 1113;

Caples v. Port Huron, E. & T. Co., 61 Tex. Civ.App. 646, 131 S.W. 303, writ of error refused; Cooper v. Hinman, Tex.Com.App., 235 S.W. 564; Odom v. Empire Building & Loan Ass'n, Tex.Civ.App., 134 S.W.2d 1053; Clements v. Lacy, 51 Tex. 150; Roy v. Clark, 75 Tex. 28, 12 S.W. 845; Jones v. Fink, Tex.Civ.App., 209 S.W. 777; Hill v. Wright, Tex.Civ.App., 30 S.W.2d 812; Hall v. Hix, Tex.Civ.App., 297 S.W. 491.

Neither were they legally aggrieved by the rise in price of the mineral-interests in the land between the dates of their first contract in 1937 and their final one in 1938, because—for a quid pro quo—they agreed to forego such a change by superseding the first by the last of such contracts, in consideration of their failure to live up to any of them; indeed, it undisputedly appears that they made no complaint against even the last one until the discovery of oil near this land, almost two years subsequent to its date, whereupon they instituted this suit to set it aside.

Neither are any of the procedural complaints they made against rulings of the court while trying the cause thought to disclose such error as either reasonably tended to or probably did cause the rendition of an improper judgment against them; wherefore, no reversal should follow on that score. Rule 434, Texas Rules of Civil Procedure.

Especially without merit is deemed their complaint against the action of the learned trial court in leaving the bench and taking a seat at the end of the jury-box while the witness, George J. Lacy, was testifying as a handwriting expert in favor of the appellees, as to whether or not the name "W. C. McGuire", appearing on the left-hand margin of the contract between these parties of August 13, 1938, was, in his opinion, the same handwriting as that in an admitted signature of appellant, W. C. McGuire, he had seen; their claim being that this unduly emphasized before the jury the testimony of such expert.

Under the facts shown, this procedure is held to have been neither improper nor fraught with any such harm to appellants, the unimpeached qualification to their bill of exception showing that the judge, while seated on the bench, had been in such a position that he could neither see the contents of the booklets the witness was using, nor follow or understand his testimony relative thereto. Moreover, appellants made no complaint nor objection whatever to the court's action during the trial, and the matter was mentioned for the first time in their motion for a new trial below. Aside from the fact that it was thus without merit, they also waived it. Sabine & E. T. R. Co. v. Broussard, 75 Tex. 597, 12 S.W. 1126; Donoho v. Carwile, Tex.Civ.App., 214 S.W. 553, writ of error refused.

Upon the whole cause, it is this court's conclusion that appellants were shown to have had a fair trial, that the issues given the jury comprehended the ultimate issues of fact raised under the pleadings and evidence, and that the findings of both court and jury had sufficient support in the testimony; the judgment will therefore be affirmed.

Affirmed.