TRINITY UNIVERSAL INSURANCE COMPANY, Appellant,

v.

Mattie B. JOLLY, Appellee.

No. 10525.

Court of Civil Appeals of Texas.

Austin.

Nov. 27, 1957.

Rehearing Denied Dec. 11, 1957.

Cade & Bowlin, Lubbock, for appellant.

Huff & Splawn, Forrest Bowers, Lubbock, for appellee.

ARCHER, Chief Justice.

This was a workmen's compensation case which was tried to a jury, resulting in a verdict and judgment for plaintiff for total and permanent disability payable in a lump sum. The plaintiff's case was based upon the theory of aggravation of a pre-existing disease.

The appeal is founded on seven points assigned as error.

Points One, Two and Three are directed to the action of the Court in overruling appellant's objection to the closing argument of appellee, in delivering an oral charge on the law of the case, in charging the jury orally upon the weight of the evidence, in instructing the jury that either side could have called Dr. Evans. Points Four, Five, Six and Seven complain of the failure of the Court to submit Special Issues Nos. One, Two, Three and Four

inquiring if the incapacity, if any, was not solely due to some bodily condition antedating the date of the alleged injury, and if the incapacity of plaintiff to work, if any, was not the sole result of a condition or conditions disconnected with any accidental injury, and as to what percentage of plaintiff's present incapacity, if any, is attributable solely to the alleged injury.

While plaintiff's counsel was making his closing argument to the jury, to which objection was made, the Court made the oral charge to the jury complained of.

It appears that on February 2, 1957, a hearing was had before the Court on the motion of defendant to require plaintiff to subject to a medical examination by Dr. D. D. Cross, prior to a trial of this case, and after testimony had been completed on the motion, the following transpired:

"The Court: Well, this has been my policy on these things, ordinarily I don't think it would be right to permit medical testimony to be pyramided. I think I am going to permit Dr. Cross to examine the plaintiff. Of course, now unless you want to use this Doctor Evans—

"Mr. Cade: I sure don't want to use him, Judge.

"The Court: If I can have your assurance that you are not going to use him, why all right.

"Mr. Cade: Well, I'm not going to use him.

"The Court: All right.

"That upon trial of said cause on February 13, 14 and 15, 1957, defendant's counsel, in his argument, relying on the said ruling of the court, made the following statement:

" 'Of course, I can't understand why they didn't have her own family doctor in here, the one that waited on her, Dr. Evans. We don't know what the situation was simply because he wasn't here, but I think we can draw some inferences by his not being here. I think from the testimony of Dr. Cross and the testimony of Dr. Tull and the fact that Dr. Evans was not here, their doctor, which, under the ruling of this Court as it stands in this case, we couldn't put on, we had no right to put Dr. Evans on, and they didn't.'

"That defendant's counsel in his argument made the following further statement, and the following transpired:

" 'Now, that knot on her head, there hasn't been a single witness in this courtroom who saw that knot except the plaintiff herself. She said it was right here, right across the top of her head. The only person on earth that could have told you, the only impartial witness who could have told you exactly what was found on the top of her head that night, when her husband took her to the hospital, wasn't here and that was her family doctor.

" 'Mr. Bowers: Now, Your Honor, Mr. Cade is commenting upon a ruling of the Court that was thrashed out some two weeks ago and in view of that comment I again offer Dr. Evans' report identified as Plaintiff's Exhibit No. 20.

" 'Mr. Cade: To which we would object, of course, Your Honor.

" 'The Court: All right. I'll overrule the objection at this time.

" 'Mr. Cade: Ladies and gentlemen, if I offerred—if the letter were offered in evidence as it was, I couldn't cross examine the doctor. The Court stated to you at the time that that's the reason he ruled it out.'

"That, thereafter, in his closing argument, plaintiff's counsel made the following remarks, and the following transpired:

" 'I want to point this out to you, too, when they get to talking about what you didn't put on the witness stand instead of talking about what you did, you'd better believe that they're worried about the lawsuit. They say, "Dr. Evans? Why in the world didn't they put on Dr. Evans? Why in the world didn't they call that treating doctor down here?" Well, I'll tell you, there's two reasons, one of which I don't think the law allows me to mention to you, but Mr. Cade knows what it is, as he sat here and said he didn't, he did. He knew what it was.

" 'Mr. Cade: If the Court please, I don't want to interrupt counsel unnecessarily but he's getting completely out of the record and he's making statements there and making inferences that are highly prejudicial and *inflamatory*, and I object to them and I move the Court to instruct the jury not to consider the statements made concerning the reasons why he didn't call Dr. Evans.

" 'Mr. Bowers: Your Honor, he commented on that.

" 'The Court: Just a minute. You folks retire for a minute.

" ' — Jury out —
(Discussion between Court and Counsel)
— Jury in —

" 'The Court: Ladies and gentlemen of the Jury, there's been some question raised about Dr. Evans and I think it's my duty to inform you, without any further argument on the question, that legally Dr. Evans could have been subpoenaed and called in here by either party.' "

The foregoing is embodied in defendant's Special Exception No. 1, duly approved by the trial judge.

We believe that the court was in error in making the statement or charge to the jury that it was his duty to inform them, "without any further argument on the question, that legally Dr. Evans could have been subpoenaed and called in here by either party," in view of his prior ruling that defendant would not use Dr. Evans, but would use Dr. Cross, and of his prior ruling on the trial of this case that Dr. Evans would not be used.

Dr. Evans treated plaintiff at the hospital, giving her medicine to take, and a shot, and plaintiff went back to see Dr. Evans a few times after she left the hospital, and testified that Dr. Evans was her doctor Later, on advice of counsel, plaintiff went to see Dr. Tull at Abilene, but received only an examination.

■ We believe counsel for the defendant was making a proper argument in referring to the failure of plaintiff to call Dr. Evans, who had attended her and who had not testified in the case.

Smerke v. Office Equipment Co., Tex. Com.App., Sec. B, 138 Tex. 236, 158 S.W.2d 302, opinion adopted by the Supreme Court.

■ We believe that the court in overruling plaintiff's objection should not have told the jury that defendant's counsel could have called Dr. Evans and in so doing prejudiced the defendant. The trial court should avoid any remark or comment as of criticism of a party or his counsel for offering evidence which the court excludes.

Speer's Law of Special Issue in Texas, p. 488; 38 Cyc. 1322; Southland Greyhound Lines, Inc. v. Matthews, Tex.Civ.App., 74 S.W.2d 713, dism.; Travelers Ins. Co. v. Simon, Tex.Civ.App., 126 S.W.2d 674.

Appellee takes the position that the argument made by her counsel was justified as having been invited by argument of appellant's counsel.

The complaint is made as to the propriety of such an argument by appellee's counsel when he knew that appellant had been precluded by the ruling of the trial court, as is

hereinabove set out, from càlling Dr. Evans, and the primary complaint is to the action of the court in making the oral statement or charge to the jury, and which we hold to be error.

We then must consider whether the judgment should be reversed and the cause remanded.

We are familiar with the decisions that hold:

"* * * before a judgment is reversed because of the argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Aultman v. Dallas Railway and Terminal Company, 152 Tex. 509, 260 S.W.2d 596, 599.

Appellee asserts that since appellant did not, at the time the remarks of the court were made, object to same that appellant has waived such objection, and ought not now be allowed to take exception to the action of the court.

Objections were made to the closing argument of appellee's counsel, but not to the remarks of the court.

Under the holding in the Aultman case, conceding error by the court, we must then determine if the actions complained of probably caused the rendition of an improper judgment.

No point is made that the verdict is excessive.

The plaintiff testified that she was 38 years old, married and had three children, and had lived in Lubbock since 1943, and had worked all of the time; that she was working for a Mr. Wilkins in a wholesale furniture house and had been for about two years and had lost very little time, and none on account of trouble with her neck or head and did not know she had a brain tumor until the trial.

That on the occasion of the accident she was helping to put up a light fixture and was standing on two wrought-iron ottomans, about 20 inches off the floor, and was holding the fixture weighing about 20 or 30 pounds, trying to push it up to the ceiling for Mr. Wilkins to bolt it to the ceiling, and her arms gave way and the fixture came down and hit her on the head; that she was taken home and lay on the bed until her husband came and took her to the hospital and she was treated by Dr. Evans and remained for 3½ days; that she has not been able to work; that she could not stoop or look up without getting dizzy; that the pain has never stopped; that the pain goes through her head down her neck and on down her back and her shoulder and arms hurt all of the time; that she cannot do her housework.

T. O. Wilkins testified that he heard Mrs. Jolly call out while she was holding the fixture and came and relieved her.

Dr. Raymond H. Tull, called by the plaintiff, testified that he had made an examination of the plaintiff on September 19, 1956, particularly as to her neck and right arm and found a damaged intervertebral disc, a damaged pad, with pinched nerves. The doctor described the several x-ray pictures of plaintiff and that the pictures disclosed that the brain was abnormal, with bony outgrowths in the area and after detailing the conditions reflected by the pictures, and in answer to a hypothetical question setting out the injuries claimed by plaintiff and the circumstances surrounding the accident, the doctor testified that there was a relationship between her present condition and the blow of the light fixture on July 24, 1956, and the cause of her condition and that it would gradually grow worse; that she is not capable of doing any manual labor and will not during the rest of her life and that nothing can be done for her.

Dr. Cross, called by the defendant, testified that in February, 1957, about six months after the alleged injury, he made

an examination of the plaintiff, particularly the head, scalp, neck, shoulders and the right arm, and made some pictures of her skull and neck and found certain abnormalities and an old injury, at least three or four years old. That there was a callus formation and calcification. The doctor did not find any fracture of the skull, but an enlarged pituitary gland and a stimulation of calcium in and around the bone structure; that the pressure of the enlarged gland in itself is like a brain tumor. The doctor testified that the lowering of a light fixture on the top of her skull, as was reported to him, would not cause enough blow on the top of her head to cause the neck condition nor the symptoms that the woman complained of; that a little jolt might have aggravated the prior existing head and neck condition.

On cross examination Dr. Cross testified that the pituitary gland was four times as large as normal and can be considered quite serious and may shorten a person's life.

On assuming that the light fixture fell with enough force to cause a knot to come upon her head, and that a three inch flat surface hit her in the top of her head with enough force to raise a knot that existed for two or three days, after she went to the hospital the doctor testified that such might vary his opinion, a change of opinion; that if the weight of 25 pounds dropped as much as four or six inches that it would hit the top of the head with enough force to cause some disturbance of the brain tissue and perhaps the tumor and might aggravate the brain tumor and the neck condition.

The doctor further testified that the plaintiff had a disabling condition.

■ We believe that there was sufficient evidence adduced to support the findings of the jury in answer to the Special Issues.

■ We have hereinabove stated that it was error for the court to make the charge or remarks but a trial judge is of necessity allowed some discretion in expressing himself in the control of the trial of a case, and a reversal should not be ordered unless there is a showing of impropriety, coupled with probable prejudice and the rendition of an improper verdict.

Fox v. Gulf, C. & S. F. R. Co., Tex.Civ. App., 80 S.W.2d 1072, er. dism.; Texas Mexican R. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, er. ref., N.R.E.

In Walker v. Texas Employers' Insurance Association, Tex., 291 S.W.2d 298, 301 it was held:

"Before an error may be made the basis of reversing a trial court judgment the appellate court must be satisfied that the error complained of 'was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.' Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party the error was reasonably calculated to help. If it could, the further provision of Rules 434 and 503 that it must also appear that the error 'probably did cause, the rendition of an improper judgment' would be meaningless and pointless.

"A determination of whether the error 'probably did cause, the rendition of an improper judgment' by influencing the jury to return a verdict it probably would not otherwise have returned is to be made from an examination of the record as a whole."

There was no objection made to the remarks of the court at the time such were made.

In Loumparoff v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d

224, it was held that so-called unwarranted comments not timely objected to could not be made the basis of an error.

McQuire v. Roemer, Tex.Civ.App., 162 S.W.2d 1048, er. ref., W.O.M.; Traders and General Insurance Company v. Collins, Tex.Civ.App., 179 S.W.2d 525, er. ref., W.O.M.; Rule 434, Texas Rules of Civil Procedure.

■ Appellant complains in points Nos. 4, 5, 6 and 7 of the failure of the court to submit requested Issue No. 1 inquiring if the incapacity, if any, is not due *solely* to some bodily condition antedating July 24, 1956, and failure to submit requested Issue No. 2, inquiring if plaintiff's incapacity to work, if any, *is the* sole result of a condition disconnected with any accidental injury, and by Special Issue No. 3, inquiring if the incapacity *is not due solely* to disease, and by Special Issue No. 4 inquiring as to what percentage of plaintiff's *present incapacity*, if any, is attributable solely to the alleged injury of July 24, 1956.

We do not believe the court erred in refusing to submit the requested issues because all matters inquired about are included in Special Issue No. 14, reading:

"Do you find from a preponderance of the evidence that the plaintiff's incapacity to work, if any you have found herein, was not solely the result of prior injuries, diseases or infirmities, or the combination thereof?

"Answer 'It was solely' or 'It was not solely.'

"Answer: It was not solely."

The jury in answer to Special Issue No. 1 found that the plaintiff had sustained an accidental personal injury to her body.

In the definition of Injury the court stated that among other damage or harm the term included Aggravation of any disease previously existing, etc. .

The jury found that the plaintiff sustained total incapacity, beginning with July 24, 1956, and that such total incapacity was permanent.

The judgment of the trial court is affirmed.

HUGHES, Justice.

Believing that this case should be reversed and remanded, I respectfully dissent.

I agree with the majority in holding that the Court's oral instruction to the jury was wrong. I do not agree that such instruction was harmless or that appellant has waived the error.

The Court had ruled, prior to his oral instruction, that appellant *could not* but that appellee *could* call Dr. Evans as a witness. Dr. Evans was not called to testify by either party.

Counsel for appellant properly and in a legitimate argument commented upon the failure of appellee to produce Dr. Evans and of his own inability to do so. The Court, however, without reason as far as the record shows, orally charged the jury as shown in the majority opinion, the effect of which was not only to destroy the force of appellant's argument on this point but to put appellant's counsel in a bad light before the jury.

I quote as apropos of this situation from the case of Dallas Consol. Electric St. R. Co. v. McAllister, 41 Tex.Civ.App. 131, 90 S.W. 933, 935, no writ history, where the Trial Court stated "If they (meaning counsel for defendant) won't stand by what they have agreed to in open court, put the witness back on the stand" as follows:

"An attorney at law is an officer of the court, and as such is under special obligation to be considerate and respectful in his conduct and communications to the court or judge. He is also as such officer entitled to such treatment from the trial judge that the

interest of his client will not be prejudiced. The trial judge is vested with large discretion in the conduct of the trial of causes, and an appellate court will not interfere to control the exercise of such discretion, unless there has been an abuse or most unwise use thereof. Enc.Pl. & Pr. vol. 21, pp. 974, 975. It must be conceded that the standing and reputation of counsel for fairness and honorable conduct and his real or apparent standing with the court has great weight with the jury in determining the importance to be attached to the evidence introduced by such attorney, as well as to his argument in discussing such evidence."

This case quotes approvingly from an opinion by the Supreme Court of Michigan in McDuff v. Detroit Evening Journal, 84 Mich. 1, 47 N.W. 671, 674, 22 Am.St.Rep. 673, as follows:

"Appellate courts must presume that one occupying so important a position as that of circuit judge can influence a jury. It is their duty to follow his instructions as to the law. Whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of the other, or uses language which tends to bring an attorney into contempt before a jury, or uses any language which tends to prejudice them, he commits an error of law for which the verdict and judgment must be promptly set aside." .

See also Traveler's Ins. Co. v. Simon, Tex.Civ.App. Beaumont, 126 S.W.2d 674, no writ history, and cases therein cited.

The extent, cause and duration of appellee's injuries were jury issues and the evidence bearing thereon was sharply conflicting.

In my opinion it would be less harmful for a Court to deny a party the right to argue to the jury than to permit him to make an argument and then improperly instruct the jury that the argument is without factual basis.

The error here, in my opinion, requires reversal under Rule 434, T.R.C.P., unless the error has been waived by failure to object to the oral instructions of the Court about which complaint is made.

It is undoubtedly the rule that errors in the trial which are curable must be objected to in order that the Trial Court may remove the error or its effect. The main error here, that of the Trial Court in giving the jury an erroneous instruction, is certainly one which could have been obviated by the Court, with or without objection, by reversing himself and withdrawing the erroneous charge. The record reflects, however, that the possibility of this occurring was very remote.

I believe that for at least two reasons the error here has not been waived by failure to object, the first of which is based upon the language used by the Court. It was that "without any further argument on the question" he was duty bound to advise the jury that appellant could have called Dr. Evans as a witness.

This statement made, after the matter had been under discussion by the Court and counsel, is, it seems to me, one which could have been interpreted by counsel, in the midst of trial, as forbidding any comment by counsel including the making of objections. Any doubt about this construction should be resolved in favor of the attorney thus encouraging respect for and obedience to the rulings of our courts. Certainly the statement implies that there had been arguments about the matter and that no more were needed. These arguments must have necessarily advanced the reasons for the Court to instruct or not instruct the jury about the matter discussed; if so they embraced the essentials of an objection.

Secondly, the record fails to show that time was given by the Court to appellant for filing proper objections to the Court's instruction. The Court instructed the jury

orally. This is not authorized by our Rules of Procedure, although the giving of a correct oral charge is not reversible error. Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 236. See Rules 272, 284, 285, 286 and 295, T.R.C.P.

Rule 272 provides that objections to the charge shall be in writing and that counsel shall have a reasonable time within which to "examine and present objections thereto."

The oral charge here was given during the course of the arguments and at a time when counsel could not be expected to prepare and file written objections which he had the right to do. He was not required to orally object, in violation of the Rules, just because the Court had orally instructed the jury in violation of the Rules.

I would reverse.